**Julian BUENO, Merle McKnight, individually and on behalf of all others similarly situated, Plaintiffs,**

v.

**Andrew F. JURAS, individually and as Administrator of the Public Welfare Division of the State of Oregon, Defendant.**

Civ. No. 71–420.

United States District Court,
D. Oregon.

May 24, 1972.

H. Jay Folberg, Stanley A. Sitnick, Associate Counsel from Foreign Jurisdiction, Legal Aid Service, Portland, Or., Victor C. Pagel, Marion-Polk Legal Aid, Salem, Or., D. Richard Fischer, Legal Aid Office, Lane County Bar Assn., Eugene, Or., for plaintiffs.

Lee Johnson, Atty. Gen., James W. Durham, Jr., Kathryn V. Kelty, Asst. Attys. Gen., Salem, Or., for defendant.

OPINION

Before JERTBERG and GOODWIN,* Circuit Judges, and BELLONI, District Judge.

ALFRED T. GOODWIN, Circuit Judge:

Nine unemployed fathers whose families receive welfare assistance brought this class action challenging, on constitu-

* The Honorable Alfred T. Goodwin, District Judge for the District of Oregon at time of hearing.

tional and statutory grounds, the authority of the Oregon State Public Welfare Division (PWD) to suspend welfare grants during the farm harvest season. Because of the alleged unconstitutionality of the challenged state action, a three-judge district court was convened pursuant to 28 U.S.C. § 2281.

■ We can dispose of the case by reference to federal and state statutes, and thus need not reach the constitutional question. Where there is a substantial challenge of a state statute on constitutional grounds a three-judge court has jurisdiction over nonconstitutional issues as well. Ness Produce Company v. Short, 263 F.Supp. 586 (D. C.Or.1966) *affirmed* per curiam 385 U. S. 537, 87 S.Ct. 742, 17 L.Ed.2d 591 (1967).

The plaintiffs claim to represent a class of persons whose families receive two kinds of assistance: Aid to Families with Dependent Children funded by state and federal matching funds under 42 U.S.C. § 601 et seq. (AFDC Matched), and Aid to Families with Dependent Children funded solely by state funds (AFDC nonmatched).

In May of 1971, the PWD defined its policy with respect to seasonal farm employment in a series of bulletins circulated to its county offices. The bulletins described plans for blanket suspension of payments to AFDC matched recipients and blanket termination of payments to AFDC nonmatched recipients when seasonal farm labor was available.

Thereafter, the county PWD offices sent notices to 1,552 recipients informing them that their welfare grants would be terminated shortly because seasonal harvesting jobs would be available.

The notices stated that if a grower made a blanket offer of employment, and if the recipient were referred to a grower, this would be the equivalent of the specific job offer described in the state regulations under ORS 418.075.

The recipients were told that welfare grants would be suspended so long as farm labor opportunities remained available, and that the recipient was to contact his caseworker if "plans did not work out." The notice informed the recipient of his right to a fair hearing, and that, if a hearing were requested, assistance would continue until a decision was reached.

Of the 1,552 families who received the notices, 930 contacted their caseworkers and their grants were continued. As of July 22, 1971, 622 families had their grants suspended or terminated. Of those 622 families, 525 were in the AFDC matched category and 97 had been receiving assistance in the AFDC non-matched category.

The AFDC nonmatched plaintiffs contend that the manner in which their grants were terminated violated state law. Since ORS 418.075 permits termination of aid for refusal to work only when the recipient "refuses without good cause to accept employment in which he is able to engage, and which is offered through any employment office * * * or which is otherwise offered by any employer * * *." The state conceded that blanket terminations are not authorized by law and agreed to abandon the practice. The issue is thus removed from the case.

The state also conceded that no grant could be suspended without a hearing, so the issue of automatic suspension is also removed from the case.

■ The only remaining question, therefore, is whether an AFDC-matched recipient's right to benefits is controlled by state or by federal law. We hold that because the federal Work Incentive Program (WIN), 42 U.S.C. § 630 et seq., presents a comprehensive program designed to help unemployed fathers of dependent children become self-supporting, the federal law controls the matter of sanctions, and inconsistent state regulations cannot be enforced. The federal WIN program has preempted the area of sanctions for refusal to work.

The state concedes that it is barred from terminating the grant of an AFDC-matching recipient who is en-

rolled in the WIN program pursuant to 42 U.S.C. § 633(a) and (b). However, the state contends that the plaintiffs here, although eligible for WIN, and referred to WIN under 45 C.F.R. § 220.35(a), have not been enrolled in WIN because the WIN program in Oregon is not sufficiently developed to enroll all who are eligible. The state then argues that only those actually enrolled in WIN are outside the reach of state rules regarding termination of benefits for refusal to work. We do not believe Congress intended such a result.

The 1967 amendments to the Social Security Act which created the WIN program were designed to reduce the number of AFDC families throughout the nation by encouraging qualified AFDC recipients to achieve economic independence. Participation of eligible recipients is mandatory. 42 U.S.C. § 602(a) (19) (F). Detailed regulations control the procedural rights of recipients, and the manner and procedures under which aid may be terminated. The recipient may seek a hearing to challenge a determination that he is eligible for participation in WIN. 42 U.S.C. § 602(a) (4); 45 C.F.R. § 220.35(a) (15). Work opportunities offered under the WIN program must be accepted. If good cause for refusal to work is lacking, the AFDC grant is terminated. 42 U.S.C. § 602(a) (19) (F). A sixty-day "grace period" permits a recipient to accept counseling which attempts to encourage the recipient to cooperate with the program. Unlike the PWD termination rules, if work is refused the father alone is terminated; aid to the dependent children is continued.

The detailed scope of WIN, the carefully drafted procedural protections, and the mandatory participation of those found eligible, persuade us that Congress intended to establish a comprehensive program which would apply to *all* AFDC matched recipients, enrolled or not enrolled, and to preempt any state work requirement applied to AFDC recipients in a manner inconsistent with

federal statutes and regulations. Woolfolk v. Brown, 325 F.Supp. 1162 (E.D. Va.1971), aff'd, 456 F.2d 652, (4th Cir., 1972).

In *Woolfolk,* the court struck down a state work rule which was applied to AFDC matched recipients found inappropriate for referral to WIN under § 602(a) (19).

The purpose of WIN is not merely to place enrollees in jobs. The jobs should offer some promise of making the enrollee self-supporting. Work Incentive Program Handbook, § 516.

Whether the plaintiffs who have been referred have not yet been enrolled because the WIN program in Oregon is not yet sufficiently developed, or whether the Secretary of Labor has determined that there are not enough acceptable jobs presently available within the state, it would be inequitable to deprive WIN referrals of the procedural safeguards and controls incorporated in the Act solely because there are not enough facilities to enroll all who are eligible.

We are not unmindful of the serious problem faced by the PWD in finding funds to meet the needs of the various categories of welfare recipients. We recognize the pressure, political and moral, upon the PWD to use both the carrot and the stick to try to place welfare recipients in gainful employment. But the state has no authority to create sanctions more onerous than those provided by federal law.

To the extent that the current regulations of the PWD are inconsistent with federal regulations, the inconsistent regulations must give way. Counsel for the plaintiffs will prepare and submit to the attorney general of Oregon for approval as to form a proposed decree. The plaintiffs may have fifteen days in which to submit the proposed decree, and the state may have fifteen days thereafter in which to submit counter proposals consistent with the views expressed herein.

The parties previously submitted lengthy proposals and objections to pro-

posed findings and conclusions. These documents will be regarded as additional briefs. This opinion shall constitute findings of fact and conclusions of law to the extent that they are required by Fed.R.Civ.P. 52(a).