**Dolores DUBLINO et al., Plaintiffs,**

v.

**NEW YORK STATE DEPARTMENT OF SOCIAL SERVICES, et al.,**
**Defendants,**

and

**Onondaga County Department of Social Services and its Commissioner, John L. Lascaris, Defendants-Intervenors.**

**Civ. No. 1971–306.**

United States District Court,
W. D. New York.

Jûly 28, 1972.

Legal Aid Bureau of Buffalo, Inc. (Michael A. O'Connor, Buffalo, N. Y., of counsel), and National Employment Law Project, New York (Dennis R. Yeager, E. Richard Larson, and Mayer G. Freed, New York City, of counsel), for plaintiffs.

Louis J. Lefkowitz, Atty. Gen., State of New York (Jean M. Coon, Asst. Atty. Gen., of counsel), for defendants.

Leonard C. Koldin, Onondaga County Welfare Atty., Syracuse, N. Y., for defendants-intervenors.

The National Assembly for Social Policy and Development, Inc., The National Welfare Rights Organization, City Wide Coordinating Committee of Welfare Organizations, and The Upstate Welfare Rights Organization (Adele M. Blong, Steven J. Cole, Kenneth P. Neiman and Henry A. Freedman, New York City, of counsel), as amici curiae.

Before OAKES, Circuit Judge, HENDERSON, Chief District Judge, and CURTIN, District Judge.

CURTIN, District Judge:

This is an action challenging the constitutionality of various provisions of the New York Social Welfare Law and regulations of the state Department of Social Services, all enacted or adopted within the last year and commonly known as the New York Work Rules. The contested provisions are Sections 131(4) and 164, as amended,[1] and 350–k [2] of the Social Welfare Law, McKinney's Consol. Laws, c. 55 and Department of Social Services Administrative Letters, Numbers 71 PWD–34 [3] and 71 PWD–43.[4] In

1. Subdivision four of Section 131 was amended by Chapter 102, Laws of New York, 1971.

Section 164 was amended by Chapter 101, Laws of New York, 1971.

2. Section 350–k was added as a new section by Chapter 101, Laws of New York, 1971.

3. Administrative Letter No. 71 PWD–34 provides as follows:

Chapter 102 of the Laws of 1971, effective July 1, 1971, amends Section 131.4 of the Social Services Law. The amendments contain three significant additions:

1. The statutory definition of "employable" is as follows:

A person shall be deemed employable if such person is not rendered unable to work by:

(a) illness of significant and substantial incapacitation, either mental or physical, to the extent and of such duration that such illness or incapacitation prevents such person from performing services.

(b) advanced age.

(c) full-time attendance at school in the case of a minor, in accordance with provisions of the Law. (N.B. this is interpreted not to include emancipated minors.)

(d) full-time, satisfactory participation in an approved program of vocational training or rehabilitation.

(e) the need of such person to provide full-time care for other members of such person's household who are wholly incapacitated, or who are children, and for whom required care is not otherwise reasonably available, notwithstanding diligent efforts by such person to obtain others to provide such care.

2. A person assigned to and participating in a public works project under the provisions of sections 164 or 350–k of the Social Services Law shall be deemed to be employable but not employed.

3. Every employable recipient of public assistance or person who is deemed not to be employable by reason of full-time satisfactory participation in an approved program of vocational training or rehabilitation shall receive his public assistance grants and allowances in person from the Division of Employment of the State Department of Labor.

The Department, in cooperation with the State Labor Department, is presently developing regulations, policies and procedures to implement this Law as of July 1, 1971. As these are developed, we will further advise you.

In order that each local social services district have as much time as possible to prepare for the orderly implementation of the Law, the following steps should be initiated immediately so that they are completed by no later than June 30, 1971:

A. Each social services district shall immediately review its under-care caseload to insure that its roster of HR and ADC employables is up to date. The roster shall be kept current by additions and deletions as they occur.

B. In addition, the following type cases shall be separately identified:

1. The "employable" not deemed to be employable because of participation in an approved program of vocational training or rehabilitation; i. e., WIN, MDTA, etc. (See Bulletin 26, page 7 for other examples). If the "employable" person is not the grantee, his relationship shall be specified.

2. The grantee is "employable", and there are one or more other "employables" in the family. The relationship of the other "employables" to the grantee shall be specified.

3. The grantee is not "employable", but there are "employables" in the family; i. e., an instance of a disabled ADC mother with an "employable" 17 year old son; etc. The relationship of the "employable" to the grantee shall be specified.

C. In each case where there is an "employable" male head-of-family, he shall be made grantee for the family grant, if he is not presently the grantee.

D. Since the "employable's" Social Security Account number will be used

brief, the Work Rules establish a presumption that certain recipients of public assistance under various state welfare programs are employable and require such recipients to report semi-monthly to the New York State Employment Service to pick up their assistance checks and accept referral to employment positions, including employment on public works projects. Relying on Title 42, United States Code, Section 1983, and its jurisdictional complement, Title 28, United States Code, Section 1343, the plaintiffs seek a judgment declaring the Work Rules violative of the Constitution in numerous respects, and an injunction restraining the enforcement of the Rules. Their complaint's demand for damages was ignored in the extensive briefs of the parties and is considered abandoned.

The named plaintiffs are recipients of public assistance under various general and particular categories of assistance[5] and proceed as representatives of a class

as an identifier, all individuals age 14 and over are required to possess a Social Security Account number.

Methods and procedures for securing a Social Security Account number for those individuals not now possessing one will be released within the next few days.

4. Administrative Letter No. 71 PWD–43 provides as follows:

As you know, the Laws of 1971 place a renewed and expanded emphasis on restoring all employable recipients of public assistance to employment in the regular economy. Accordingly, all unemployed employable persons applying for or receiving public assistance are not only required to register at the New York State Employment Service district office in their community, and report there regularly for appropriate employment counseling services and job referral; but, effective July 1, they will also pick up their assistance checks there. The penalty for not cooperating in this procedure is ineligibility for public assistance whether the individual is the grantee head of family, single person living alone, or non-grantee non-head of family.

The Law places the full responsibility for the determination of employability and for the required action in applying sanctions for failure to cooperate in the process on the local social service agencies. It is the intent of the Legislature that the services required to implement the various provisions of the Law be a top priority activity in social service agencies and that the necessary monitoring of the program to provide the report data necessary for evaluation be an inherent part of the entire process.

To assist you in implementing and evaluating the legal requirements, this Department has had a series of discussions and clearances with the New York State Department of Labor and the Social Security Administration. We have reached agreement regarding the basic components and a standardized procedure which will assure uniform, effective processing and reporting operations state-wide. Obviously, it will be necessary for you to establish close working relationships with the local offices of these agencies to assure that everything possible is done to achieve an orderly work flow so that the objective of the Law to restore employable recipients to employment may be accomplished without confusion, or harassment to the recipients. Because of the wide variations in workloads throughout the State, some minor adjustments in the procedures outlined may be necessary at the local level. It is important that these do not interfere in any way with the required referral process or reporting requirements.

I also believe that there is need for planned local publicity around these new requirements of the Law and the procedures for implementing them. I urge you to utilize all available community resources to help you to promote a full understanding of this important legislation.

This Department is planning a series of special meetings around the State with you and representatives of your staff to explain and clarify the policy and procedural material reflected in this Administrative Letter. If you have any questions we will be happy to help you resolve them. Representatives from the Department of Labor will also be participating with staff of this Department in these meetings. I am certain that you will give this matter your immediate attention so that this intensified effort toward employment can be operative by July 1.

5. The categories of public assistance in New York particularly common in this lawsuit are Home Relief and Aid to Families with Dependent Children.

composed of all other New York residents similarly situated. Temporary restraining orders directing the defendants to issue plaintiffs' assistance checks by mail and restraining enforcement of the Work Rules generally have been issued in the case of the named plaintiffs and a number of additional intervening plaintiffs, each of whom submitted affidavits alleging particular hardships as a consequence of compliance with the Work Rules.

The Work Rules were enacted in response to a March, 1971 special message from Governor Rockefeller directing the New York Legislature to consider means of transferring the able-bodied from the welfare rolls to payrolls.[6] Section 131(4) of the Social Welfare Law was amended to provide that employable welfare recipients, effective July 1, 1971, must pick up their grants in person semi-monthly at a designated office of the Division of Employment of the State Department of Labor. The amendment includes as presumptively employable all persons 16–64 years of age except for reason of

illness or significant and substantial incapacitation, either mental or physical, to the extent and of such duration that such illness or incapacitation prevents such person from performing services; advanced age; full-time attendance at school in the case of minor . . .; full-time, satisfactory participation in an approved program of vocational training or rehabilitation; the need of such person to provide full-time care for other members of such person's household who are wholly incapacitated, or who are children, and for whom required care is not otherwise reasonably available, notwithstanding diligent efforts by such person and the appropriate social services department to obtain others to provide such care.

---

Home Relief [HR] is a general assistance program for persons not covered by other programs of assistance. Aid to Families with Dependent Children [AFDC and AFDC-U] is a program of financial assistance given to a family with minor children without sufficient means of support because of the absence, unemployment, death or incapacity of a parent. New York is partially reimbursed by the federal government for expenditures under the AFDC program, but there is no federal reimbursement for the costs of the HR program. See Title 42, United States Code, Sections 601 et seq.

Other categories include Veteran Assistance, a segment of the HR program, and Old Age Assistance, Assistance to the Blind, and Aid to the Disabled. Excepting Veteran Assistance, these programs are partially federally financed. See Title 42, United States Code, Sections 1381 et seq.

6. In pertinent part, the Special Message stated:

Work is essential to a healthy individual and a healthy society.

Welfare should be a bridge to work for those able to work, as well as a shield against want.

Welfare benefits should aid those who work and need supplemental help.

But welfare benefits will not be a substitute for work.

The welfare legislation I am submitting to your Honorable Bodies therefore:

1. Redefines employability and limits the discretion of local social services districts to declare an individual unable to work;

2. Requires every employable public assistance recipient to report to the State Employment Service every two weeks to pick up his assistance check instead of having it mailed by the welfare district as is presently done;

3. Requires a bi-weekly employment counselor interview through which an employable public assistance recipient would be directed to a private job opportunity, or a training program, or a public works project;

4. Requires every social service district to provide or contract for a public works program—including neighborhood environmental and day care center work —to which the Employment Service may assign appropriate employable recipients;

5. Directs the Employment Service to locate and develop employment opportunities for unskilled public assistance recipients, to maintain a special job register, and to provide job preparation and follow-up services;

6. Denies welfare to an employable individual who quits a job without good cause or refuses a job he or she is able to perform.

In addition to establishing a system of referrals for employment in the regular economy, the Work Rules, Section 350–k, permit the establishment of public works projects in social services districts.[7] Failure to report and participate in the operation of the Work Rules deprives one of eligibility for public assistance.

The plaintiffs contend that the Work Rules compel involuntary servitude in violation of the Thirteenth Amendment, deprive persons subject to the Work Rules of due process and equal protection in violation of the Fourteenth Amendment, and conflict with provisions of the federal Social Security Act[8] in violation of Article 6, Clause 2, the Supremacy Clause of the Constitution.

Turning to the plaintiffs' last argument first, their position is that the application of the Work Rules to AFDC recipients is improper since to do so is to impose conditions of eligibility for assistance in addition to those set out in the pertinent federal statutes, see Title 42, United States Code, Sections 602 et seq., and thereby violate the statutory direction of Section 602(a)(10) that "aid to families with dependent children shall be furnished with reasonable promptness to all eligible individuals." The plaintiffs further argue that the Work Rules are in conflict with and preempted by the federal Work Incentive Program (WIN),[9] at least with respect to persons in federally reimbursed assistance programs such as AFDC.

■ In King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968), Townsend v. Swank, 404 U.S. 282, 92 S. Ct. 502, 30 L.Ed.2d 448 (1971), and Carleson v. Remillard, 406 U.S. 598, 92 S.Ct. 1932, 32 L.Ed.2d 352 (1972), the Court held that "a state eligibility standard that excludes persons eligible for assistance under federal AFDC standards violates the Social Security Act and is therefore invalid under the Supremacy Clause." *Townsend*, 404 U. S. at 286, 92 S.Ct., at 505. Plaintiffs point to Section 131(4) of the New York Social Welfare Law and its implementing regulation, 18 N.Y.C.R.R. § 385.6, which provide for the termination of assistance and/or a thirty-day penalty period upon a recipient's failure to comply with the Work Rules as inconsistent with Section 602(a)(10) of the Social Security Act. The state's only answering argument is that the Rules serve merely to implement Section 602(a)(8) of the Act. This section, according to the state, permits the state to disregard, in determining family need, the needs of any person who in the preceding thirty days or more has either deliberately reduced earning capacity, quit a job, or refused to accept employment offered through the State Employment Service. This, however, is a misreading of the statute. Section 602(a)(8) permits the state, where the recipient fails to cooperate in the ways described, only not to disregard the first thirty dollars of earned income and one-third of the balance of the monthly earnings. Clearly the Work Rules go much further—they permit the denial of public assistance. As to AFDC eligibles, then, the Work Rules are in conflict with Section 602(a)(8).

Plaintiffs' second argument, that the Rules are preempted by the WIN program, has been successful in recent attacks on analogous state legislation in Virginia, see Woolfolk v. Brown, 325 F. Supp. 1162 (E.D.Va.1971), aff'd, 456 F.

---

7. The public works projects provisions have not been implemented. By letter, dated April 28, 1971, the HEW Regional Commissioner indicated to Commissioner Wyman that such projects, as they related to AFDC recipients, would not be approved for federal aid.

8. In passing, it should be noted that despite the efforts of the plaintiffs, at the direction of the court, neither the views nor the participation of the Department of Health, Education, and Welfare could be obtained in this lawsuit.

9. 42 U.S.C. §§ 602(a) and 632 et seq. See generally Comment, Public Welfare "WIN" Program: Arm Twisting Incentives, 117 U.Pa.L.Rev. 1062 (1969), and Comment, The Failure of the Work Incentive (WIN) Program, 119 U.Pa.L. Rev. 485 (1971).

2d 652 (4th Cir. 1972), and Oregon, see Bueno v. Juras, 349 F.Supp. 91 (D.Or. 1972). Both cases describe in detail the statutory and regulatory background of the WIN program, but a brief resume of the program's highlights may be appropriately repeated.

The WIN program, part of the 1967 amendments to the Social Security Act, is administered by HEW and the Department of Labor. State welfare agencies evaluate AFDC recipients to determine which are "appropriate" for referral to WIN. See Title 42, United States Code, Sections 602(a)(19)(A)(i) and (ii). The evaluation of individuals' proceeds with unemployed fathers initially and other defined groups thereafter. See U.S. Dep't. of Health, Education & Welfare, Guidelines For the Work Incentive Program, § 6101 (1969). Upon referral by a caseworker familiar with the recipient's background, the local Employment Services Agency of the Department of Labor conducts its own assessment of the individual, draws up a plan meeting the individual's employability needs, and places him in a suitable work position, occupational training, or special works projects. See Title 42, United States Code, Sections 602(a)(19) (D), 633(b), 633(d) and 634.

Like the Work Rules, WIN is "designed to help families and individuals to become self-supporting rather than dependent upon welfare checks," see S. Rep.No.1589, 87th Cong., 2d Sess. 7 (1962), but, unlike the Work Rules, WIN provides more elaborate procedural protections for the public assistance recipient. Under WIN, the recipient is entitled to a hearing, prior to referral, on the issue of appropriateness for referral. See Title 42, United States Code, Section 602(a)(4) and 45 C.F.R. § 220.35(a)(15). A second hearing, if needed, on the issue of good cause for refusal to accept employment or training after referral to WIN is also required.

See Title 42, United States Code, Section 633(g) and 45 C.F.R. § 220.35(a)(16). In the event of a finding that good cause is not present, a recipient may delay termination of assistance by accepting counseling for a period of sixty days. See Title 42, United States Code, Section 602(a)(19)(F).

As an incentive, WIN enrollees in assessing their welfare needs are permitted to disregard the first thirty dollars of their monthly earned income and one-third of the remainder. See Title 42, United States Code, Section 602(a)(8)(A)(ii). Adequate child care must be assured for working mothers as a precondition of WIN referral. See Title 42, United States Code, Section 602(a)(15)(B)(i). Compulsory referral of the aged, or those required at home for other reasons, is prohibited. See Title 42, United States Code, Section 602(a)(19)(A).

In contrast to the complex WIN referral procedures, with the use of appropriateness determinations, employability teams, and personal development plans, the screening procedures of the Work Rules are substantially less elaborate. In a recent study [10] of the operation and effect of the Work Rules, over sixty-seven percent of a sample of persons declaring themselves unemployable to the Department of Social Services caseworkers were, upon referral to the State Employment Service, found to be in fact unemployable and therefore improperly referred.

In enacting the WIN program and the Work Rules, Congress and the New York Legislature, respectively, have sought a similar end but by unquestionably different means. As the *Woolfolk* court noted:

Congress has endorsed the use of the threat of termination of subsistence level support as a means of forcing the acceptance of training or employ-

10. See Study of Selected Aspects of the 1971 New York State Legislative Provisions on Public Assistance Employables (March 1972) prepared by the United States Department of Health, Education, and Welfare and Department of Labor and the New York State Department of Labor and Department of Social Services.

ment only when the job or the training meets specific federal requirements. State rules seeking roughly similar ends but differing sharply in means cannot coexist. (325 F.Supp. at 1177.)

In addition to pointing to the *Woolfolk* decision as suitable authority for holding the New York Work Rules invalid under the Supremacy Clause, plaintiffs point to the comprehensiveness of a number of WIN provisions as evidencing a preemptive intent. For example, Section 602(a)(19)(A) of Title 42, United States Code, provides for the referral to WIN of *each* appropriate AFDC recipient. Further pointing up the conflict, plaintiffs argue, is the possibility that persons deemed inappropriate for WIN referral may nonetheless be referred to work under the Work Rules under threat of grant termination for failure to comply. Finally, plaintiffs point to the different penalty provisions of WIN and the Work Rules. The Work Rules require an AFDC recipient to accept referral to WIN, when such a referral is made, under threat of being subjected to a penalty of thirty days of ineligibility for AFDC, see 18 N.Y.C.R.R. § 385.-6(a)(2). WIN in contrast provides for ineligibility only for so long as a person refuses to cooperate. See Title 42, United States Code, Section 602(a)(19)(F). Further, WIN requires sixty days of counseling prior to termination for refusal to participate, but there is no counseling requirement prior to the imposition of the thirty-day penalty under the Work Rules.

■ While it should "not be presumed that a federal statute was intended to supersede the exercise of the power of the state unless there is a clear manifestation of intention to do so," Schwartz v. Texas, 344 U.S. 199, at 202, 73 S.Ct. 232, 235, 97 L.Ed. 231 (1952), we find nothing in the state's brief which compels us to reach a conclusion different from *Woolfolk* and *Bueno* on the preemption question. The comprehensive intent and language of WIN, as well as its legislative history, clearly

support the proposition that, for those in the AFDC program, WIN preempts the Work Rules program.

■■ Plaintiffs next argue that the Work Rules violate the Thirteenth Amendment "because they violate the standards of due process which must be met before the highly placed freedom from compulsory work can be infringed, and because the public works projects implemented by the New York Work Rules impose a form of involuntary servitude on welfare recipients." We find the argument unpersuasive and without merit in all respects. Requiring employable persons on public assistance to engage in employment if available, in the absence of circumstances different from those presented in this case, is entirely proper. See generally, United States v. Shackney, 333 F.2d 475 (2d Cir. 1964).

Plaintiffs' final arguments, that the Work Rules violate the Equal Protection and Due Process clauses of the Constitution, need only be considered with reference to recipients of public assistance under the Home Relief program, one over which the federal government exercises no "power of the purse."

Under the Equal Protection clause, it is argued that, while a classification of persons as "unemployed employables" might be rational, the Work Rules, by establishing a presumption of employability, erect an improper and irrational classification. The check pickup requirement, plaintiffs claim, works a serious hardship on recipients by effectively reducing their grants and subjecting recipients to the risk of a complete summary loss of assistance. These results arise from recipients incurring uncompensated transportation expenditures in traveling to pick up their checks and, where transportation is unexpectedly unavailable, risking loss of the check for several days in the complicated state welfare bureaucracy, since checks not picked up at SES must be returned to the local welfare agency until further investigation before release. The due process arguments are that the Work Rules' definition of employability is un-

reasonably vague, and that the absence of any provision in the Rules permitting recipients a hearing to challenge their classification as employable violates the requirements of Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

Practically, there are arguments which can be made that the presumption of employability is irrational. Before the state enacted this legislation, no attempt was made to determine the skills or training possessed by individuals who would be classified as employable, and the state had no information about what jobs they could fill. This legislation was enacted at a time when throughout the state and elsewhere many individuals with considerable know-how and experience were being laid off and unable to locate new employment. "The number of unemployed [in New York last August] was the highest for any August on record."[11]

 A statutory classification in the area of social welfare, however, is consistent with the Equal Protection Clause if it is "rationally based and free from invidious discrimination," see Dandridge v. Williams, 397 U.S. 471, 90 S. Ct. 1153, 25 L.Ed.2d 491 (1970). The Work Rules reflect a judgment by the state's Executive and Legislature that a drastic revision of the state's welfare program was in order. This court cannot say that the Rules are without a rational basis under the circumstances.

This is not to say that the Rules do not inflict hardships upon welfare recipients. For those living a long distance from the SES office and without a private means of transportation, the semi-monthly check pickup is a major expense and therefore works a reduction of the grant. An attempt by the Legislature's Committee on Social Services to obtain passage of a bill (S. 8858, A. 10661) providing for a hardship justification permitting some to be relieved of the check pickup requirement failed to make any headway in the recent legislative session. Section 385.5 of the Regulations of the Department of Social Welfare, however, was amended by the Commissioner of Social Services in March, 1972. Under the amended regulation, semi-monthly reporting is changed to reporting four times a year if a "transportation hardship" exists and other conditions are met. The "transportation hardship" means:

(1) Absence of public transportation from the recipient's home to the SES office;

(2) Absence of private means of transportation, including neighbors, friends, and relatives;

(3) The recipient's home is not within a reasonable walking distance to such office; *and*

(4) The social services official is unable to provide transportation through the use of case aids, volunteers, etc. to enable the recipient to report to the SES on a semi-monthly basis.

If all the above are present and a "transportation hardship" is determined to exist, then the social services official may require the recipient to document his efforts to resolve his transportation hardship.

The difficulties incident to the semi-monthly check pickup requirement, while probably a harsh burden for many HR recipients if the affidavits of the intervening plaintiffs herein are any measure of problems arising across the state, do not on the facts now before the court arise to a denial of equal protection. There is no evidence that the state has singled out those with transportation hardships as targets of a special classification or special treatment.

 The Work Rules are said to be unconstitutionally vague in defining those who are and are not subject to them. Particular reference is made to

11. *Id.* at 21.

various regulations, for example, 18 N. Y.C.R.R. § 385.1(6), adopted in an effort to explain that list of factors in Section 131(4) of the Social Welfare Law, recited earlier,[12] which exempt the ill, aged, and certain others from participation in the program. While it is apparent that the Rules do not provide administrators with the detail and precision that would prevent confusion and error in the classification process, so long as procedures exist whereby people who are not "employable" are not thrust indiscriminately into the class of "employables," neither the presumption of employability nor the lack of precision in some parts of the Rules rise to the dimension of violating due process.

This brings us to the question of the adequacy of the procedures under the Rules for fair hearings in accordance with *Goldberg, supra.* Plaintiffs claim there is no provision in the Work Rules for any formal administrative review of a person's classification as employable until his assistance grant is placed in jeopardy by a refusal to comply with the Rules. Further, unless the recipient prevails at the hearing at the pre-termination stage, the consequence of noncompliance is a mandatory thirty-day penalty during which assistance is denied even if the recipient changes his mind.

In an affidavit submitted to the court after oral argument in this matter, the Commissioner (then Executive Deputy) of the Department of Social Services stated in part:

> Under the fair hearing policies of the State Department of Social Services an individual who is determined to be employable by a local social services official and who feels aggrieved by such determination of his status as an employable person, has a right to a fair hearing before the State Commissioner of Social Services on such issue.
>
> There is no required condition for such fair hearing that the individual

be first discontinued from public assistance. He may test, by a fair hearing, the correctness of his classification as an employable person, while complying with the registration, certification, employment referral and check pick-up requirements.

Section 131, subdivision (4) of the Social Services Law requires every employable individual to receive his public assistance check in person at a local office of the State Employment Service; whereas, if he is deemed not to be an employable individual, the check is mailed to him. These requirements relate to the manner of payment of assistance. Accordingly, the issue of an individual's employability status is an "adequacy" issue relating to manner of payment under Section 84.3 of the Rules of the State Board of Social Welfare (now effective as a Regulation of the Department) which provides that applicants for or recipients of public assistance shall be entitled to a fair hearing on the grounds of: "inadequacy in amount or manner of payment of assistance . . . ."

■ Although the Commissioner's representations effectively nullify plaintiffs' argument on the absence of and need for a fair hearing upon a determination of employability and before termination, the record remains barren of any indication that recipients are aware of the above procedure. Moreover, the general dimensions of the due process protections afforded at the hearing, see *Goldberg, supra,* 397 U.S. at 267–271, 90 S.Ct. 1011, are not described. To the extent that persons are unaware of their right to a hearing because of a lack of forthright disclosure by the state, the right's value is reduced. Accordingly, within thirty days after the filing of this decision, the state is directed to implement suitable means of informing HR recipients of their hearing rights. *Cf.* Hagans v. Wyman, 462 F.2d 928 (2d Cir., 1972).

12. See page 294, *supra.*

**300**

The further effect of this decision is to enjoin the operation of the Work Rules as applied to AFDC recipients. This, of course, does not mean that the court is ignoring the state's problems in managing its welfare system or disagreeing with the merits of a state program to move persons from welfare rolls to payrolls. In short, as the *Bueno* court noted, "We recognize the pressure, political and moral, upon the [welfare department] to use both the carrot and the stick to try to place welfare recipients in gainful employment." What the decision does mean, however, is that at least with respect to AFDC recipients, the WIN program is the exclusive manner of applying the carrot and stick.