**Lydia AGUAYO et al., Plaintiffs,**

v.

**Elliot R. RICHARDSON, Secretary of the United States Department of Health, Education and Welfare, et al., Defendants.**

**No. 72 Civ. 3287.**

United States District Court,
S. D. New York.

Oct. 16, 1972.

Adele M. Blong, New York City (Steven J. Cole, Henry A. Freedman, Center on Social Welfare Policy and Law, New York City, of counsel), for individual and organizational plaintiffs.

Norman Redlich, Corp. Counsel, City of New York, for Plaintiff Sugarman and City of New York.

Joseph P. Marro, Asst. U. S. Atty., New York City (Whitney North Seymour, Jr., U. S. Atty., Peter A. Herbert, Asst. U. S. Atty., New York City, Joel Cohen, Thomas Scarlett, Atty. Advisor, Dept. of H. E. W., Washington, D. C., Jerome T. Levy, New York City, Dept. of H. E. W., of counsel), for Federal defendants.

Amy Juviler, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen. of N. Y., of counsel), for State defendants.

Robert J. Egan, New York City (Marian P. Ames, Mildred A. Shanley, New York City, of counsel), for amici curiae.

## OPINION

BAUMAN, District Judge.

This is an action challenging the approval by the Secretary of the Department of Health, Education and Welfare (HEW) of two project applications submitted by the New York State Department of Social Services. These two projects, the Public Service Work Op-

portunities Project (PSWOP) and Incentives for Independence (IFI) were finally approved as demonstration projects pursuant to Social Security Act § 1115 (42 U.S.C. § 1315) on June 1, 1972 for implementation starting August 1, 1972. A temporary restraining order, issued on August 4, 1972, prevented this and application has now been made for a preliminary injunction. Plaintiffs also petition for the convening of a three judge court pursuant to 28 U.S.C. §§ 2282 and 2284.

The PSWOP program has been approved for an initial period of one year and is to be in effect in 14 social service districts throughout the State. It requires every "employable" member of a family receiving welfare assistance under the Aid to Families with Dependent Children (AFDC) program to register with the New York State Employment Service for training and employment. Employability is determined by reference to specific guidelines which exempt certain types of welfare recipients: those already employed, receiving training, or unable to accept employment because of the need to care for dependents. If employable under the guidelines, the recipient would be required to accept referral to a suitable manpower training program, or to employment in the public or private sector depending on his particular qualifications. If the recipient is unsuited for a training program or regular employment, he would be referred to a job specifically established by the PSWOP program. Failure to comply would result in loss of benefits.

The IFI program, also of one year's duration, is to operate only in three of the 14 areas. Like PSWOP, IFI requires welfare recipients to accept training or employment. PSWOP however, only permits recipients to "work off" their welfare grants. They can earn no more than their weekly welfare stipend. Under IFI, a recipient who receives a job could keep a portion of his earnings without a grant reduction and might thus be able to increase his monthly income. IFI differs from PSWOP in two other major aspects. It includes a "Work Motivation For Youth" program which provides jobs for children of AFDC families who are over 16 and attending school as well as counselling for families whose children are school truancy problems.

Both of these programs are specifically denoted to be experimental.

Plaintiffs fall into three categories: recipients of public assistance under AFDC, welfare rights organizations, and the City of New York and its Commissioner of Social Services. Their attack on the PSWOP and IFI programs is twofold. First, they allege that the programs are constitutionally defective because they deny plaintiffs' right to due process and equal protection secured by the Fifth and Fourteenth Amendments of the Constitution. Second, they allege that the programs fail to comply with various requirements of the Social Security Act (42 U.S.C. § 301 et seq.).

For the reasons stated below, I find the plaintiffs' Constitutional claims to be without substance, and that as a consequence, this Court lacks jurisdiction over the State defendants. Jurisdiction over the Federal defendants pursuant to the provisions of the Administrative Procedure Act is properly invoked.

I.

At the threshold, one encounters a serious question of standing with respect to two of the three categories of plaintiffs. Although plaintiffs do not address themselves to this question, and defendants do so only briefly, it is the view of the Court that the welfare organizations lack the requisite standing to sue and the City of New York has standing only with respect to the statutory claims.

The case of Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L. Ed.2d 636 (1972), seems determinative as to the welfare organizations. In that case, the Sierra Club sought a declaratory judgment and an injunction restraining Federal officials from approving a

skiing development in a national forest. The Supreme Court reiterated the test of standing first enunciated in Association of Data Processing Service Organizations v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970) and Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970), i. e., plaintiffs have standing to challenge the action of a Federal administrative agency where such action caused them "injury in fact" and where that alleged injury was to an interest "arguably within the zone of interests to be protected or regulated" by the statute allegedly violated (397 U.S. at 153, 90 S.Ct. 827, 830). In *Morton*, the Court found no indication that the Sierra Club would be significantly affected by the proposed development and observed that "broadening the categories of injury that may be alleged in support of standing is a different matter from abandoning the requirement that the party seeking review must have himself suffered an injury." 405 U.S. at 738, 92 S.Ct. at 1368.

In National Welfare Rights Organization v. Wyman, 304 F.Supp. 1346 (E.D. N.Y.1968), Judge Weinstein ruled that two welfare organizations were without standing to contest certain amendments to New York's Social Services Law because there was no showing of any injury to the organizations as distinct from the possible diminution of welfare benefits to its membership. That is the case here as well.

■ The City of New York and its Commissioner of Social Services lack the standing to raise constitutional claims. The identical question arose in City of New York v. Richardson, 71 Civ. 802 (S.D.N.Y.1972), a case in which New York City sought to enjoin enforcement of the welfare provisions of the Social Security Act. Judge McLean held that a city, which is a political subdivision of a State, could not challenge the validity of a State statute on Fourteenth Amendment grounds, relying on Wil-

liams v. Mayor and City Council of Baltimore, 289 U.S. 36, 53 S.Ct. 431, 77 L. Ed. 1015 (1933), the leading case on this question. *Williams* states: "A municipal corporation, created by a state for the better ordering of government, has no privileges or immunities under the Federal Constitution which it may invoke in opposition to the will of its creator." (289 U.S. at 40, 53 S.Ct. at 432). I concur with Judge McLean in finding continued vitality in the reasoning of *Williams* and find that it binds the City of New York and its Commissioner of Social Services here.

■ The City of New York does, however, have standing to challenge the Secretary's approval under the provisions of the Administrative Procedure Act, 5 U.S.C. § 701 et seq. 5 U.S.C. § 702 provides: "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." Whether this statute permits municipal corporations to challenge agency action was implicitly determined in Scenic Hudson Preservation Conference v. Federal Power Commission, 354 F.2d 608 (2d Cir. 1965), which held, inter alia, that certain New York towns had standing to obtain review of an FPC decision to build a hydroelectric project. The Court there noted that the towns were "aggrieved parties" because the project's transmission lines would cause a decrease in the proprietary value of publicly held land, reduce tax revenues collected from privately held land, and interfere with long range community planning. See also, Road Review League, Town of Bedford v. Boyd, 270 F.Supp. 650 (S.D.N.Y.1967), holding that a town had standing to challenge an administrative determination regarding the placement of highways.

Counsel for the City complains that the programs will involve it in additional expense of about $2.6 million.[1] Seen in relation to a total budget of over $8.6

1. See affidavit of Jule M. Sugarman, at pp. 3–4.

billion and approximately 1¼ million people on the relief rolls the argument is almost trifling.[2] One would think the City would enthusiastically endorse a responsible experiment calculated to enrich the lives of its citizens by taking them off relief and putting them to self respecting work. However, in view of the alleged administrative burden and possible financial loss which New York City claims it will incur, I conclude that it is a "person aggrieved" within the meaning of 5 U.S.C. § 702 and may raise statutory claims.

## II.

Plaintiffs allege jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337; pursuant to 5 U.S.C. § 701 as to the Federal defendants, and pursuant to 28 U.S.C. § 1343(3) as to the State defendants. For the following reasons the Court holds that it is without jurisdiction over the State defendants, and is possessed of jurisdiction as to the Federal defendants pursuant to 5 U.S.C. § 701 only.

Before reaching this question however, it is necessary to consider plaintiffs' Constitutional arguments. All of these contentions are insubstantial and thus the ultimate thrust of the attack on the programs is reduced to construction of the appropriate statutes.

■ Plaintiffs make three Constitutional claims. The first is to be found in the fifth and sixth claims of their complaint which charge that the implementation of the PSWOP and IFI programs in 14 social services districts in the State affects only one quarter of the State's welfare recipients. This, they argue, constitutes invidious discrimination in violation of the Fifth and Fourteenth Amendments' guarantee of equal protection. The recent case of Dandridge v. Williams, 397 U.S. 471, 90 S. Ct. 1153, 25 L.Ed.2d 491 (1970), is a direct answer. It involved a suit by AFDC recipients to enjoin application of a Maryland maximum grant regulation as inconsistent with the Social Security Act and the Equal Protection Clause. The Supreme Court disposed of the equal protection argument as follows: "In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.'" (397 U.S. at 485, 90 S.Ct. at 1161). See also, Jefferson v. Hackney, 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972).

It is beyond reasonable dispute that the classification here at issue has a rational basis. The programs which the plaintiffs allege to be discriminatory are experimental projects of limited duration. New York State, in cooperation with the Federal government, has undertaken them to gain experience bearing on whether they should ultimately be applied throughout the State. It is not a matter of a State capriciously requiring some welfare recipients to work and exempting others. The classifications created for the experiment are neither arbitrary nor intended to be permanent. The districts clearly were selected in order to provide an adequate sampling of welfare recipients of various ethnic backgrounds as well as those from urban, suburban and rural areas and, seen in this light, seem eminently reasonable.

■ Plaintiffs' second Constitutional argument is that standards and defined procedures to be followed in the operation of the project are so utterly lacking as to be violative of the Due Process Clause of the Fifth and Fourteenth Amendments. They argue that the only standards provided are "tried and true catch words like 'good cause', 'adequacy', and 'suitability'" and that the individu-

2. See brief of amici curiae, at p. 12.

al case worker is left with virtually unfettered discretion. However, the materials submitted by the Department of Social Services in support of the PSWOP and IFI proposals contain a detailed list of the factors that are intended to guide administrative decisions. The criteria of employability, set out in the margin,[3] are as precise as might reasonably be required and further specificity would, it seems to me, impose insuperable burdens upon draftsmen and administrators alike.

■ Plaintiffs' final Constitutional attack depends upon an assumption that the PSWOP and IFI programs fail to provide a pretermination hearing as mandated by Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). However, the Social Services Department of New York State pursuant to 18 N.Y.C.R.R. § 385.1 et seq. has committed itself[4] to providing a hearing as to any PSWOP or IFI decision that might affect a recipient's right to receive public assistance. This would seem to insure a hearing to anyone challenging a determination of employability or a particular job assignment. Under the programs a recipient would continue to receive his grant whether or not he reported to his job assignment until the outcome of the hearing is decided—a provision seemingly designed to comply with the Goldberg standard. See also, Dublino v. New York State Department of Social Services, 348 F.Supp. 290 (W. D.N.Y.1972).

■ Accordingly, plaintiffs' Constitutional arguments seem so insubstantial as to require that I deny their motion to convene a three-judge court pursuant to 28 U.S.C. §§ 2282 and 2284.

### III.

■ Plaintiffs argue that the Court has jurisdiction over both State and Federal defendants pursuant to 28

---

3. A recipient will be found employable and thereby subject to IFI or PSWOP work requirements except by reason of:
 1. full-time employment;
 2. attendance at school, including a vocational or technical school, a college or a university, for a minor other than an emancipated minor;
 3. attendance full-time in grade or high school for an emancipated minor;
 4. full-time, satisfactory participation in an approved program of vocational training or rehabilitation which shall include but not be limited to participation in the Work Incentive Program or a two-year college program with a specific vocational objective;
 5. part-time employment to the extent permitted by medical verification, or to the extent permitted by inability to secure adequate care for children or other incapacitated members except on a part-time basis;
 6. mental or physical illness or incapacity medically verified to be of such significant or substantial nature as to prevent such person from engaging in employment; age shall be a basis of unemployability only when it is verified that the individual is potentially hazardous to himself or others with whom he is associated; and persons with a history of drug addiction shall be demed employable only when determined medically to be free of drug use or to be participating in a methadone maintenance program or a rehabilitation program; or
 7. the need of such person to provide full-time care for other members of such person's household who are verified to be wholly incapacitated, or who are children, and for whom required care is not otherwise reasonably available, notwithstanding diligent efforts by such person and the social services district to obtain services or the assistance of others to provide such care.
 In addition the following two conclusions applicable to all AFDC recipients are added in the project districts:
 8. mothers or relatives caring for children under age 6;
 9. mothers or female caretakers of children if the father or other adult male relative in the home is registered.

4. See State defendants memorandum of law, p. 29 et seq.

U.S.C. §§ 1331[5] and 1337.[6] The invocation of § 1337 is clearly frivolous. The Social Security Act is not an act "regulating commerce or protecting trade and commerce against restraints and monopolies" as Chief Judge Friendly noted in Almenares v. Wyman, 453 F.2d 1075 at 1082 (2d Cir. 1971), cert. denied 405 U.S. 944, 92 S.Ct. 962, 30 L.Ed.2d 815 (1972). Nor does this Court possess jurisdiction under 28 U.S.C. § 1331, the statute which provides for general "arising under" jurisdiction. None of the plaintiffs alleges an individual financial loss of $10,000 and Snyder v. Harris, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969), precludes the aggregation of claims.

 Plaintiffs further contend that 28 U.S.C. § 1343[7] confers jurisdiction over the State defendants. Although this question has not yet been finally resolved by the Supreme Court, this Circuit has held in Almenares v. Wyman, supra, that a substantial Constitutional claim is essential for jurisdiction under § 1343(3) because the Social Security Act is not an "Act * * * providing for equal rights of citizens." Statutory claims do not suffice. As indicated, I regard the Constitutional claims in the instant case as insubstantial and I therefore hold that no jurisdiction attaches to the State defendants pursuant to § 1343.

**IV.**

 Jurisdiction over the Federal defendants does exist under 5 U.S.C. § 701 et seq., providing for judicial review of the actions of Federal agencies. The issue before this Court then is whether the Secretary's determination, under 42 U.S.C. § 1315, that the PSWOP and IFI programs were likely to promote the objectives of Title IV–A of the Social Security Act was erroneous. The scope of judicial review of the Secretary's action is defined in 5 U.S.C. § 706. In essence, the statute requires this Court to determine whether the Secretary's action was "arbitrary, capricious, an abuse of discretion", "contrary to constitutional right", or "in excess of statutory jurisdiction." The Supreme Court has recently set the standards lower courts must apply in making such determinations, "To make this finding, the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment . . . . Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency." Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).

5. § 1331 provides, in pertinent part:
The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States.

6. § 1337 provides:
The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies.

7. 28 U.S.C. § 1343 provides:
The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

(1) To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42;
(2) To recover damages from any person who fails to prevent or to aid in preventing any wrongs mentioned in section 1985 of Title 42 which he had knowledge were about to occur and power to prevent;
(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;

■ After a careful study of the PSWOP and IFI programs, I have concluded that the approval of the Secretary was not erroneous. 42 U.S.C. § 1315 clearly states the consideration that is to guide the Secretary's decision here. The pilot or demonstration project may be approved if in the Secretary's judgment it is likely to assist in promoting the objectives of Title IV–A of the Social Security Act. Among the objectives of the Act, and of the AFDC program in particular, are the strengthening of family life and the attainment of "maximum self-support and personal independence consistent with the maintenance of continuing parental care." (42 U.S.C. § 601). The Secretary obviously had these precise objectives in mind when he approved the PSWOP and IFI programs. They require welfare recipients to work in order to learn the necessary skills so that they may live fuller and more productive lives thereafter. It is not the function of this Court under such circumstances to weigh the conflicting policy considerations that were brought to bear in devising these programs; that was the task of the State and Federal officials who formulated them. The Court's sole function here is to monitor the approval of the Secretary and to determine whether his decision was consistent with the objectives of the AFDC provisions of the Social Security Act. That it obviously is.

■ I must, however, advert briefly to plaintiffs' principal statutory argument. They contend that § 1315 forbids the approval of projects which diminish any statutory rights or entitlements established under the Social Security Act. The PSWOP and IFI programs, they argue, effectively diminish such rights and entitlements by forcing upon welfare recipients increased expenses for additional food, clothing and the like while their welfare stipend remains the same. This argument might have some cogency were one to accept plaintiffs' interpretation of § 1315. However, it has no authority either in the language of the statute or in its legislative history.[8] That section merely provides that an approved project must be "likely to assist in promoting the objectives of" various titles of the Social Security Act. Obviously, a program which limits or varies certain of the various statutory entitlements may nevertheless further the objectives of the Social Security Act. Among these objectives, as has already been noted, is increasing the independence and self sufficiency of welfare recipients and assisting in their integration into the work force.

Defendants do not dispute plaintiffs' contention that the PSWOP and IFI programs may slightly increase the weekly expenditures of welfare recipients, although the State Commissioner of Social Services has represented that the cost of transportation, lunch and clothing will be absorbed by the State. They contend that the programs may ultimately lead to the removal of recipients from the welfare rolls and thus serve the objectives of the Social Security Act despite any short term detriment to recipients participating in the projects. It must be remembered here that this is an experimental program of limited duration; a thorough evaluation after the program has run its course should disclose whether it has resulted in an actual, substantial diminution of benefits to welfare recipients.

8. A recent decision of the U. S. District Court for the Northern District of California rejected precisely the same interpretation of § 1315 urged by plaintiffs. In California Welfare Rights Organization v. Richardson, 348 F.Supp. 491, the Court upheld the Secretary's approval of the "California co-payment experiment", a program whereby those eligible would "co-pay" for medical assistance which the State provided. The plaintiffs argued that § 1315 forbade any diminution of medical benefits, but the Court found nothing in the language of § 1315 to support such an argument.

Plaintiffs finally contend that the PSWOP and IFI programs are inconsistent with 42 U.S.C. § 602(a)(19),[9] the so-called work incentive or WIN pro-

9. 42 U.S.C. § 602(a)(19) provides:

A State plan for aid and services to needy families with children must provide—

(A) for the prompt referral to the Secretary of Labor or his representative for participation under a work incentive program established by part C of—

(i) each appropriate child and relative who has attained age sixteen and is receiving aid to families with dependent children,

(ii) each appropriate individual (living in the same home as a relative and child receiving such aid) who has attained such age and whose needs are taken into account in making the determination under section 602(a)(7) of this title, and

(iii) any other person claiming aid under the plan (not included in clauses (i) and (ii)), who, after being informed of the work incentive programs established by part C, requests such referral unless the State agency determines that participation in any of such programs would be inimical to the welfare of such person or the family;

except that the State agency shall not so refer a child, relative, or individual under clauses (i) and (ii) if such child, relative, or individual is—

(iv) a person with illness, incapacity, or advanced age,

(v) so remote from any of the projects under the work incentive programs established by part C that he cannot effectively participate under any of such programs,

(vi) a child attending school full time, or

(vii) a person whose presence in the home on a substantially continuous basis is required because of the illness or incapacity of another member of the household;

(B) that aid under the plan will not be denied by reason of such referral or by reason of an individual's participation on a project under the program established by section 632(b)(2) or (3) of this title;

(C) for arrangements to assure that there will be made a non-Federal contribution to the work incentive programs established by part C by appropriate agencies of the State or private organizations of 20 per centum of the cost of such programs, as specified in section 635(b) of this title;

(D) that (i) training incentives authorized under section 634 of this title, and income derived from a special work project under the program established by section 632(b)(3) of this title shall be disregarded in determining the needs of an individual under section 602(a)(7) of this title, and (ii) in determining such individual's needs the additional expenses attributable to his participation in a program established by section 632(b)(2) or (3) of this title shall be taken into account;

(E) that, with respect to any individual referred pursuant to subparagraph (A) who is participating in a special work project under the program established by section 632(b)(3) of this title, (i) the State agency, after proper notification by the Secretary of Labor, will pay to such Secretary (at such times and in such manner as the Secretary of Health, Education, and Welfare prescribes) the money payments such State would otherwise make to or on behalf of such individual (including such money payments with respect to such individual's family), or 80 per centum of such individual's earnings under such program, whichever is lesser and (ii) the State agency will supplement any earnings received by such individual by payments to such individual (which payments shall be considered aid under the plan) to the extent that such payments when added to the individual's earnings from his participation in such special work project will be equal to the amount of the aid that would have been payable by the State agency with respect to such individual's family had he not participated in such special work project, plus 20 per centum of such individual's earnings from such special work project; and

(F) that if and for so long as any child, relative, or individual (referred to the Secretary of Labor pursuant to subparagraph (A)(i) and (ii) and section 607(b)(2) of this title) has been found by the Secretary of Labor under section 633(g) of this title to have refused without good cause to participate under a work incentive program established by part C with respect to which the Secretary of Labor has determined his participation is consistent with the purposes of such part C, or to have refused without good cause to accept employment in which he is able to engage which is offered through the

gram. WIN, administered by the Department of Labor, is a comprehensive manpower services, training and employment program. PSWOP and IFI must be invalid, so the plaintiffs argue, insofar as their requirements conflict with those of WIN. All cases cited by plaintiffs in support of this proposition,[10] among them Dublino v. New York State Department of Social Services, 348 F. Supp. 290 (W.D.N.Y.1972), hold that *State* work programs inconsistent with WIN are invalid because they violate the Supremacy Clause. These cases are obviously inapposite, however, because PSWOP and IFI are not State but Federal programs approved by the Secretary of HEW and the Supremacy Clause is not applicable. The inconsistencies between PSWOP and IFI and § 602(a) (19) are of course covered by the provisions of 42 U.S.C. § 1315 already cited, which permit the Secretary to waive any of the requirements of § 602 in approving a demonstration project. Although plaintiffs argue that there has been no

explicit waiver by the Secretary of § 602(a)(19), a fair reading of the "Action Memorandum" approved by the Secretary for the PSWOP program (Federal defendants' Exhibit A) or for the IFI program (Exhibit B) compels the conclusion that § 602(a)(19) is implicitly waived by the Secretary's waiver of § 602(a)(10). The memorandum shows an awareness of the possible inconsistency between the PSWOP program and § 602(a)(19) and the acknowledgment of such inconsistency in itself constitutes a waiver.

For all of the reasons given above, plaintiffs' motion to convene a three-judge court is hereby denied, and their motion for a preliminary injunction against enforcement of the PSWOP and IFI programs in New York State is hereby denied.

The above constitute my findings of fact and conclusions of law in accordance with Rule 52(a) Fed.R.Civ.P.

So ordered.

---

public employment offices of the State, or is otherwise offered by an employer if the offer of such employer is determined, after notification by him, to be a bona fide offer of employment—

(i) if the relative makes such refusal, such relative's needs shall not be taken into account in making the determination under clause (7), and aid for any dependent child in the family in the form of payments of the type described in section 606(b)(2) of this title (which in such a case shall be without regard to clauses (A) through (E) thereof) or section 608 of this title will be made;

(ii) aid with respect to a dependent child will be denied if a child who is the only child receiving aid in the family makes such refusal;

(iii) if there is more than one child receiving aid in the family, aid for any such child will be denied (and his needs will not be taken into account in making the determination under clause (7)) if that child makes such refusal; and

(iv) if such individual makes such refusal, such individual's needs shall

not be taken into account in making the determination under clause (7); except that the State agency shall, for a period of sixty days, make payments of the type described in section 606(b)(2) of this title (without regard to clauses (A) through (E) thereof) on behalf of the relative specified in clause (i), or continue aid in the case of a child specified in clause (ii) or (iii), or take the individual's needs into account in the case of an individual specified in clause (iv), but only if during such period such child, relative, or individual accepts counseling or other services (which the State agency shall make available to such child, relative, or individual) aimed at persuading such relative, child, or individual, as the case may be, to participate in such program in accordance with the determination of the Secretary of Labor;

10. Woolfolk v. Brown, 325 F.Supp. 1162 (E.D.Va.1971), aff'd 456 F.2d 652 (4th Cir. 1972); Bueno v. Juras, 349 F.Supp. 91 (D.Or.1972); Jeffries v. Sugarman, 345 F.Supp. 172 (S.D.N.Y.1972).