Irene Fritsch, Appellant, *v.* Helene Wohlgemuth, Secretary of Public Welfare, Department of Public Welfare, Commonwealth of Pennsylvania, Appellee.

84

Argued February 7, 1975, before President Judge BOWMAN and Judges CRUMLISH, JR., and MENCER, sitting as a panel of three.

*Eugene F. Zenobi,* with him *Alan Linder,* for appellant.

*Darius G. C. Moss,* Assistant Attorney General, with him *Barry A. Roth,* Assistant Attorney General, and *Marx S. Leopold,* General Counsel, for appellee.

OPINION BY PRESIDENT JUDGE BOWMAN, May 15, 1975:

Eschewing a number of available practical and legal remedies to alleviate appellant's plight, Central Pennsylvania Legal Services (CPLS) has, instead, launched a constitutional attack on Department of Public Welfare (DPW) Regulation No. 3182. Pursuant to this regulation, appellant's public assistance benefits were terminated due to her spouse's refusal to accept employment. Hence this appeal.

The Fritsch family had been receiving benefits under the Aid to Families with Dependent Children (AFDC) program. In order to be eligible for or retain eligibility for these benefits, an applicant must comply with DPW regulations regarding employment, DPW Regulations No. 3180 et seq.

Regulation No. 3182 provides in relevant part that "[e]very employable person is required, as a condition of eligibility for assistance, to seek, accept and retain employment within the level of his capacity." Appellant's husband has, despite appellant's efforts to the contrary, refused to seek and accept possible employment. In such cases, the regulations further provide that "[a]n employable person who fails to meet these requirements is ineligible for assistance, as is his spouse and minor ... children living with him." Accordingly, the public assistance benefits in question were terminated.

Upon receipt of the termination notice, appellant secured the assistance of CPLS and thereafter, CPLS requested a departmental hearing in order to challenge the Department's proposed termination of benefits as violative of the Social Security Act and the Fourteenth Amendment to the United States Constitution. The hearing officer, on May 10, 1974, issued an adjudication affirming the termination of benefits solely on the basis that appellant's husband refused to seek and hold employment thus rendering appellant and her children ineligible for assistance. This appeal followed and we affirm.

Prior to proceeding to a discussion of the merits of appellant's constitutional attack, we deem it appropriate to point out that the seemingly harsh impact on appellant and her children of this decision is considerably ameliorated when one considers the other possible remedies available to appellant's counsel short of this constitutional attack. During the pendency of this appeal, appellant's benefits are being continued, and as appellant's counsel admitted at oral argument, other avenues are available to appellant to insure that she and her children continue to receive public assistance benefits.[1]

Appellant's constitutional attack is based upon an alleged violation of the equal protection and due process clauses of the United States Constitution. The initial inquiry when analyzing an equal protection argument is to determine which of two possible standards of review is applicable. Either the classification in question must bear some rational relationship to a legitimate state interest, or, if fundamental rights are involved, the classification must withstand the stricter scrutiny of promoting a compelling state interest. *Stottlemyer v. Stottlemyer,* —— Pa. ——, ——, 329 A.2d 892, 894 (1974).

The Supreme Court of the United States in *Dandridge v. Williams,* 397 U.S. 471, 485 (1970), resolved the issue of which standard to apply in social welfare cases. In declaring constitutional a state imposed maximum assistance benefit regardless of the number of dependent children, the Court stated:

"In the area of economics and social welfare, a State does not violate the Equal Protection Clause

---

1. Removal by the appellant-mother and her children from the common domicile with the husband-father; initiation of civil or criminal child support proceedings against the father, Act of May 10, 1951, P.L. 279, *as amended,* 62 P.S. §2043.7 et seq. (civil); 18 Pa. C.S. §4321 et seq. (criminal). Dissolution of the family unit inherent in the first alternative and probable in the others is discussed in the body of this opinion, *infra.*

merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification . . . in practice . . . results in some inequality." (Citations omitted.)

Appellant concedes that there is no question of the importance of state interest in promoting the employment of employable persons. Appellant, however, contends that the current regulations, designed to promote that interest, do not have a rational basis because the family members suffer when the father refuses to work.

We believe that the issue of whether regulations requiring an employable AFDC recipient to accept employment have a rational relationship to a legitimate state interest has been answered by the United States Supreme Court in *New York State Department of Social Services v. Dublino,* 413 U.S. 405 (1973). In that case, a three judge statutory court, *Dublino v. New York State Department of Social Services,* 348 F. Supp. 290 (W.D.N.Y. 1972), had declared that the Social Security Act through the Work Incentive Program (WIN) of promoting employment barred a state from requiring individuals to accept employment as a condition for receipt of AFDC assistance. Although constitutional issues were not involved, the Supreme Court, in reversing the lower court, did declare:

"As to AFDC participants, however, the decision below would render the Work Rules inoperative and hold WIN 'the exclusive manner of applying the carrot and stick' in efforts to place such recipients in gainful employment. 348 F Supp, at 300.

"This is a sweeping step that strikes at the core of state prerogative under the AFDC program—a program which this Court has been careful to describe as a 'scheme of cooperative federalism.' King v. Smith, 392 US 309, 316, 20 L Ed 2d 1118, 88 S Ct 2128 (1968); Dandridge v. Williams, 397 US 471,

478, 25 L Ed 2d 491, 90 S Ct 1153 (1970) ; Jefferson v. Hackney, 406 US 535, 542, 32 L Ed 2d 285, 92 S Ct 1724 (1972). It could impair the capacity of the state government to deal effectively with the critical problem of mounting welfare costs and the increasing financial dependency of many of its citizens. New York has a legitimate interest in encouraging those of its citizens who can work to do so, and thus contribute to the societal well-being in addition to their personal and family support. To the extent that the Work Rules embody New York's attempt to promote self-reliance and civic responsibility, to assure that limited state welfare funds be spent on behalf of those genuinely incapacitated and most in need, and to cope with the fiscal hardships enveloping many state and local governments, this Court should not lightly interfere. The problems confronting our society in these areas are severe, and state governments, in cooperation with the Federal Government, must be allowed considerable latitude in attempting their resolution." (Footnote omitted.) 413 U.S. at 412, 413.

Furthermore, in concluding its opinion, the Supreme Court flatly stated:

"Our ruling establishes the validity of a state work program as one means of helping AFDC recipients return to gainful employment. . . ." 413 U.S. at 422.

That Regulation No. 3182, in its application, well produces harsh results in some instances, cannot be denied. We also recognize that a stated purpose of the Public Welfare Code, Act of June 13, 1967, P. L. 31, 62 P.S. §401, as expressed in its policy declaration is the "preservation of family life." This same declaration, however, equally recognizes that public assistance shall be administered so as "to encourage self-respect, self-dependency and the desire to be a good citizen and useful to society."

These expressed state policies and interests cannot always be fully achieved. Inevitably, in any welfare pro-

gram, one policy must at least yield in part to the other under given circumstances. Here the state has chosen to give a limited priority of one over the other to the extent of potentially disrupting a family unit which includes a husband-father apparently wholly devoid of self-respect, totally devoid of a desire to seek self-dependency, and, most importantly, directly influencing his children by example to become the next generation of continued dependency upon public welfare.

**In an area in which the state authorities must be** allowed considerable latitude in attempting to resolve sometime conflicting objectives, we believe that the state's approach to resolving the problem here posed is reasonable even though it will likely produce a dissolution of the composition of this particular family unit if appellant and her children are to become eligible for the AFDC program.

We are also of the opinion that a rational basis for the regulation exists in which the state has a legitimate interest expressed in the economics and funding of welfare programs and in an attempt to promote self-reliance and civic responsibility notwithstanding the denial of eligibility if the family unit here in question maintains its present status quo.

Appellant also contends that Regulation No. 3182 is violative of the Social Security Act or of its general intent. We find these arguments to be without merit in view of *Dublino, supra.*[2]

---

2. Although not applicable to the instant case, we find it noteworthy that as of July 1, 1975, section 402(a)(26) of the Social Service Amendments of 1974, P.L. 93-647, 88 Stat. 2337, to the Social Security Act will require that as a "condition of eligibility for aid, each applicant or recipient will be required—

. . . . .

"(B) to cooperate with the state . . . (ii) in obtaining support payments for such applicant and for a child with respect to whom such aid is claimed . . . ."

Accordingly, we enter the following

ORDER

Now, May 15, 1975, the order of the Department of Public Welfare terminating AFDC benefits to appellant's family is hereby affirmed.

---

This is a direct legislative mandate that fathers will not be permitted to escape their filial responsibilities while the State provides their families with the basic necessities of life.