378 A.2d 849

**Irene FRITSCH, Appellant,**

v.

**Helene WOHLGEMUTH, Secretary of Public Welfare, Department of Public Welfare, Commonwealth of Pennsylvania.**

Supreme Court of Pennsylvania.

Argued Nov. 18, 1976.

Decided Oct. 7, 1977.

392

Central Pennsylvania Legal Services, Eugene F. Zenobi, Reading, Alan Linder, Lancaster, for appellant.

Darius G. C. Moss, Asst. Atty. Gen., Dept. of Public Welfare, James R. Adams, Robert Hoffman, Harrisburg, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

EAGEN, Chief Justice.

This appeal raises the question of whether the Pennsylvania Department of Public Welfare (DPW) acted contrary to law when, pursuant to a departmental regulation, it ordered the Aid to Families with Dependent Children (AFDC) assistance of a mother and her five minor children terminated because of the failure of the father, with whom they were living, to seek and accept employment. Prior to the department's action, the family unit had been receiving assistance because of the father's unemployment. See 42 U.S.C.A. § 607. The father, Francis Fritsch, had been registered as a participant in the federal Work Incentive Program (WIN) administered through the Pennsylvania Bureau of Employment Security (BES). See 42 U.S.C.A. §§ 602, 630, *et seq.*

The AFDC program is a "scheme of cooperative federalism" jointly financed by the states and the federal government. *King v. Smith*, 392 U.S. 309, 316, 88 S.Ct. 2128, 2133, 20 L.Ed.2d 1118 (1968). The states participating in this scheme "have considerable latitude in allocating their AFDC resources, since each State is free to set its own standard of need and to determine the level of benefits by the amount of funds it devotes to the program." *Id.*, 392 U.S. at 318–19, 88 S.Ct. at 2134. [Footnotes omitted.] The Social Security Act of 1935, as amended, authorizes the expenditure of AFDC funds

"[f]or the purpose of encouraging the care of dependent children in their own homes or in the homes of relatives by enabling each State to furnish financial assistance and rehabilitation and other services, as far as practicable under the conditions in such State, to needy dependent

children and the parents or relatives with whom they are living to help maintain and strengthen family life and to help such parents or relatives to attain or retain capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care and protection  .   .   . ."

42 U.S.C.A. § 601. Although section 406(a) of the Act defines a "dependent child" eligible for AFDC assistance as "a needy child  .   .   . who has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent" and who is living with one or more specified relatives in a home maintained by such a relative, section 407(a), added in 1961 and subsequently amended, expands the definition to include a needy child living in such a home "who has been deprived of parental support or care by reason of the unemployment  .   .   . of his father." 42 U.S.C.A. §§ 606(a), 607(a). The Fritsches were within this expanded category of AFDC eligibility.

On July 18, 1973, the Lancaster County Board of Assistance sent a communication to appellant Irene M. Fritsch notifying her that assistance to the family would be terminated as of August 15, 1973, because

"Francis Fritsch has failed to comply with the employment policies of this agency—# 3180. You have not shown us that you have been looking for work, and have failed to follow through on job interviews arranged by WIN–BES." [1]

Mrs. Fritsch, contending that the pertinent DPW regulation was improperly applied to her and her minor children and was in violation of the Social Security Act and the United States Constitution, appealed and requested a fair hearing.

The requested hearing was held on November 7, 1973. At the hearing it was made clear that the specific regulation

1. The Fritsch AFDC grant at this time was $416 per month. The needs of Mr. Fritsch were apparently included in this figure. It is not clear from the record why the termination notice was addressed to Mrs. Fritsch rather than her husband, since it referred to him in the second person.

relied upon as the basis for the termination of assistance was
DPW–Pa Manual section 3182,[2] which provided:

> "Every employable person is required, as a condition of
> eligibility for assistance, to seek, accept and retain em-
> ployment within the level of his capacity. The effect of
> failure to retain employment on eligibility for assistance
> depends on the following factors: the deliberateness and
> frequency of leaving employment, and the person's efforts
> to seek other employment. An employed person who has
> employment that does not provide for himself, and his
> spouse and minor or incompetent children, is required to
> seek and accept additional or more remunerative work
> consistent with his capacity and the opportunities for such
> work.

> "An employable person who fails to meet these require-
> ments is ineligible for assistance, *as is his spouse and
> minor or incompetent adult children living with him.*

> "The employable person and his dependents remain
> ineligible until the employable person demonstrates to the
> satisfaction of the County Assistance Office that he is
> making a sincere effort to get and hold employment."
> [Emphasis added.]

The board then presented uncontradicted testimony that Mr.
Fritsch had repeatedly and consistently failed to show up for
the job interviews which had been arranged for him and to
otherwise seek employment. Mrs. Fritsch herself testified
that she had frequently urged her husband to cooperate and
seek employment, but that he had refused to do so. She
testified to the continuing need and dependency of herself
and her children, and her counsel argued that the depart-
ment's regulation unlawfully penalized her and her children
for the conduct of her husband.

On May 10, 1974, the department's hearing examiner
denied Mrs. Fritsch's appeal and "confirmed" the proposed
action of the board of assistance. She then took an appeal
against the Secretary of Public Welfare to the Common-

2. Section 3180, cited in the termination notice, was the general
introductory section to DPW's employment policies.

wealth Court, and a three-judge panel of that court affirmed the order of the department. *Fritsch v. Wohlgemuth*, 19 Pa.Cmwlth. 83, 338 A.2d 706 (1975). A petition for rehearing by the Commonwealth Court en banc was denied, and we granted appellant's petition for allowance of appeal.

Appellant argues that DPW regulation 3182 is in conflict with section 402(a)(19)(F) of the Social Security Act, 42 U.S.C.A. § 602(a)(19)(F), which provides inter alia that if a WIN participant related to and living with an eligible dependent child is found "to have refused without good cause to accept employment in which he is able to engage which is offered through the public employment offices of the State," *his* "needs shall not be taken into account" but protective payments taking into account the rest of the family unit "will be made"; she urges therefore that the application of the regulation so as to terminate her aid and that of her children violated the Social Security Act. We agree and accordingly reverse.[3]

▇ Initially, we observe that the Pennsylvania legislature has recently added section 405.1 to the Public Welfare Code; the added section, providing detailed rules governing the Pennsylvania Employables Program, supersedes the challenged regulation 3182 and appears to provide for continuing assistance payments to the family unit in situations like the one involved instantly. Act of June 13, 1967, P.L. 31, No. 21, § 405.1(d)(2), added July 9, 1976, P.L. 993, No. 202, § 3, 62 P.S. § 405.1 (Supp.1977–78). Further, appellee here asserts assistance to appellant and her children has never actually been terminated, at first because she continued to receive payments during the pendency of her departmental appeal and then because her husband subsequently departed from the home. Appellant, however, asserts that if the Commonwealth Court's decision in this case is allowed

**3.** Appellant advances additional arguments that the challenged regulation, which by its terms operates to penalize the wife and minor children of the recalcitrant husband and father if they continue to live with him but not otherwise, is in violation of public policy, due process, and equal protection. Since we reverse on a statutory ground, we do not reach these arguments.

to stand, she will remain liable for approximately $1600 paid to her between the time the board would have terminated her assistance and the time her husband left the home, and that appellee continues to assert this overpayment claim. Appellee does not dispute this.[4] We thus do not find the controversy to be moot and so determine the merits of appellant's claim.

In *New York State Department of Social Services v. Dublino*, 413 U.S. 405, 93 S.Ct. 2507, 37 L.Ed.2d 688 (1973), the Supreme Court of the United States addressed and clarified the complex relationship between state and federal law with respect to the AFDC program. Certain AFDC recipients had there challenged the application to them of the New York Work Rules, which had imposed upon them conditions for AFDC eligibility in excess of those found in the Social Security Act, and a three-judge district court had held that it was the intention of Congress in the Act to pre-empt state law in this area. The Supreme Court reversed, holding that pre-emption per se was not the intention of Congress and that the states were free to impose additional eligibility requirements so long as these did not substantially conflict with federal law:

"Congress 'has given the States broad discretion,' as to the AFDC program, *Jefferson v. Hackney*, 406 U.S. 535, 545, 92 S.Ct. 1724, 1731, 32 L.Ed.2d 285 (1972); see also *Dandridge v. Williams*, 397 U.S. [471] at 478, 90 S.Ct. [1153] at 1158 [25 L.Ed.2d 491]; *King v. Smith*, 392 U.S. 309, 318–319, 88 S.Ct. 2128, 2133–2134, 20 L.Ed.2d 1118 (1968), and '[s]o long as the State's actions are not in violation of any specific provision of the Constitution or the Social Security Act,' the courts may not void them. *Jefferson*, supra, at 541 of 406 U.S., at 1729 of 92 S.Ct. Conflicts, to merit judicial rather than cooperative federal-state resolu-

4. Appellee argues only that the public-policy aspect of the controversy has become moot due to the departure of appellant's husband. We observe that section 255.3(c) of the revised DPW-Public Assistance Eligibility Manual provides: "Restitution is *required* for overpayments which occur when assistance is continued pending a hearing decision." [Emphasis added.]

tion, should be of substance and not merely trivial or insubstantial. *But if there is a conflict of substance as to eligibility provisions, the federal law of course must control. King v. Smith*, supra; *Townsend v. Swank*, 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971); *Carleson v. Remillard*, 406 U.S. 598, 92 S.Ct. 1932, 32 L.Ed.2d 352 (1972)." [Emphasis added.]

413 U.S. at 423, n. 29, 93 S.Ct. at 2518, n. 29. The Court therefore remanded the case to the district court for a determination of whether such conflict existed.

In its opinion in the instant case, the Commonwealth Court concentrated on appellant's constitutional claims and rejected her claim of substantial conflict between the challenged regulation and the Social Security Act, merely holding that this claim was "without merit in view of *Dublino.*" 19 Pa.Cmwlth. at 89, 338 A.2d at 709. The court thus apparently failed to recognize that *Dublino* does not automatically validate state eligibility requirements with respect to the AFDC program but requires a determination of whether such requirements actually are in substantial conflict with federal law.

A significant factor emphasized by the *Dublino* Court in rejecting per se pre-emption was the fact that New York did not subject WIN participants to its challenged Work Rules, but only applied them to AFDC recipients unable to participate in WIN:

"New York . . . has attempted to operate the Work Rules in such a manner as to avoid friction and overlap with WIN. Officials from both the State Department of Labor and a local Social Service Department testified below that every AFDC recipient appropriate for WIN was first referred there, that no person was to be referred to the state program who was participating in WIN, and that only if there was no position available for him under WIN, was a recipient to be referred for employment pursuant to state statute. Where coordinate state and federal efforts exist within a complementary

administrative framework, and in the pursuit of common purposes, the case for federal pre-emption becomes a less persuasive one." [Footnote omitted.]

413 U.S. at 421, 93 S.Ct. at 2517. See also *Woolfolk v. Brown*, 538 F.2d 598 (4th Cir., 1976) (Virginia Work Rules not in substantial conflict with federal law could be applied to AFDC recipients *not* in work incentive areas.) In the instant case, on the other hand, the record clearly indicates that Mr. Fritsch was living in a work incentive area and was a participant in the federal Work Incentive Program.[5] We thus conclude that the provisions of section 402 of the Social Security Act relating to the termination of AFDC assistance to WIN participants were applicable to Mr. Fritsch and his family, and that the attempt by DPW to apply the more stringent provisions of regulation 3182 to appellant and her children was in violation of federal law.

Appellee concedes that under the WIN provisions of section 402 only the assistance of the recalcitrant WIN participant himself is subject to termination,[6] but argues that, because of his non-cooperation with the WIN program, Mr. Fritsch was properly placed in the Pennsylvania Employables Program and regulation 3182 was properly applied to him. The record, however, indicates that Mr. Fritsch was a WIN participant, and there is no indication that he was

**5.** Under section 432(a) of the Social Security Act, 42 U.S.C.A. § 632(a), the Secretary of Labor is to establish WIN programs within a state only in the political subdivisions "in which he determines there is a significant number of individuals who have attained age 16 and are receiving aid to families with dependent children." Appellee informs us that WIN programs currently exist in 27 of Pennsylvania's 67 counties.

**6.** The regulations promulgated by H.E.W. are in accord with this interpretation. See 45 C.F.R. § 233.11(F). See and compare *Batterton v. Francis*, 432 U.S. 416, 97 S.Ct. 2399, 53 L.Ed.2d 448 (75–1181, decided June 20, 1977), in which the Supreme Court held that the applicable federal regulation, which permitted the states to exclude certain categories of fathers from the definition of "unemployed" and thus exclude their children from AFDC eligibility, did not violate the Social Security Act. The WIN provisions of section 402 of the Act and the federal regulations pertinent thereto were not involved in *Batterton*.

removed from WIN pursuant to the applicable federal law.[7] In our view, therefore, DPW lacked authority to circumvent the clear intention of Congress with regard to the family of a WIN participant, and the application of regulation 3182 to appellant was in substantial conflict with federal law. We need not here determine whether such substantial conflict would have existed if the challenged regulation had been applied to AFDC recipients not participating in WIN.

The order of the Commonwealth Court is reversed.

JONES, former C. J., did not participate in the decision of this case.

---

7. Section 402(a)(19)(F) provides that if the Secretary of Labor makes a finding that the individual has refused without good cause to participate in WIN or has refused without good cause to accept employment in which he is able to engage, his needs shall no longer be taken into account with regard to AFDC assistance. It further provides, however, that protective payments taking into account the needs of this individual shall be made for an additional period of sixty days, if during this period he accepts counseling aimed at persuading him to participate in WIN. There is nothing in the record to indicate that the Secretary of Labor here made such a finding or that Mr. Fritsch was offered or had refused counseling.