Robert DAVIS, Individually and on behalf of his wife, Victoria Davis, his two children, Robert and Janel Davis, Plaintiffs,

Jane Jensen, Plaintiff-Intervenor,

v.

Michael REAGAN, Individually and as Commissioner of the Iowa Department of Social Services, Defendant.

Civ. No. 78–106–D.

United States District Court,
S. D. Iowa, C. D.

Feb. 13, 1980.

On Application for Stay and Motion to Amend Judgment March 19, 1980.

Mark S. Schaffner of HELP Legal Assistance, Davenport, Iowa and Timothy J. Casey, Center on Social Welfare Policy and Law, Inc., New York City, for plaintiffs.

Michael B. Trister, Washington, D. C., for plaintiff-intervenor.

Thomas J. Miller, Atty. Gen., Stephen C. Robinson, Asst. Atty. Gen., Des Moines, Iowa, for defendant.

### RULING AND ORDER

STUART, Chief Judge.

This matter came to trial before the Court on January 17, 1980. At such time, the parties filed a Stipulation of Facts, and as a result, no material facts are disputed. Appearances are noted in the Clerk's minutes.

The Iowa Department of Social Services (hereinafter "IDSS") administers the Aid to Families with Dependent Children (hereinafter "AFDC") program for which it receives federal moneys. The AFDC program is designed to provide financial assistance to families with dependent children in financial need in cases where one parent is dead, absent from the home, incapacitated or unemployed. As a corollary to the[*] AFDC program, Congress created the WIN program which is an employment and employment referral program for AFDC families. In Iowa, the WIN program is operated through the Iowa Department of Job Services pursuant to an agreement between such agency and the Secretary of Labor. In some counties, the WIN program is mandatory. In other counties, it may be voluntary or non-operational. In mandatory WIN counties, nonexempt AFDC persons must register in the WIN program to receive AFDC benefits. AFDC persons in voluntary WIN counties may register in the WIN program, or with the Job Service of Iowa in its capacity as a state public employment agency to qualify for benefits.

Robert Davis initiated this action pursuant to 28 U.S.C. §§ 2201–2202 and 42 U.S.C. § 1983, requesting declaratory and injunctive relief on behalf of himself, his wife, their minor children, and all persons similarly situated. In his complaint, the plaintiff alleges that the defendant Commissioner of IDSS, presently Michael Reagan as successor to Victor Preisser, improperly terminated all AFDC payments to his family under the unemployed fathers component of the AFDC program because he was "deregistered" from the WIN program for his failure to participate.

The plaintiff contends that the defendant's actions pursuant to the above-mentioned state regulations were invalid (1) as a violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution (a) because deregistration of a parent for failure to participate in WIN without good cause deprives all members of the needy family of AFDC while deregistration of caretaker relatives other than a parent for the same reason only reduces AFDC payments because such relatives needs are not considered in computing the amount; (b) because AFDC assistance is terminated to the innocent family members when a parent refuses an employment offer, but not if AFDC qualification is based on the parent's death, continued absence or incapacity; (2) as a violation of the Due Process Clause of the Fourteenth Amendment because needy dependent children are punished for the alleged wrongdoing of their fathers; and (3) as

void under the Supremacy Clause because the state standards are inconsistent with the federal standards set forth in 42 U.S.C. § 602 and 45 C.F.R. § 224.51 (1978). The parties stipulate that Davis's termination was based upon his refusal of an offer of employment and Section IV–D of the IDSS Employees Manual which requires termination of AFDC–UF benefits to all family members where the unemployed parent refuses an offer of employment without good cause. There is no dispute that Davis in fact refused employment without good cause or that the procedures outlined in the IDSS manual were properly followed.

On December 13, 1979, the Court granted Jane Jensen's Application to Intervene and her complaint was filed December 20, 1979. In this complaint, the plaintiff-intervenor alleges that the family's AFDC benefits were improperly terminated as a result of her husband's refusal without good cause of an offer of employment. The parties stipulate that Russell Jensen, the plaintiff-intervenor's husband, registered with the Job Service of Iowa in its capacity as a state public employment office since his county of residence was a voluntary WIN area. Upon questioning by the Court, the defendant's counsel admitted that Jensen was registered with Job Service at the time benefits to himself and his family were terminated, and therefore, was not deregistered. As was the case with the plaintiff, there is no dispute that Russell Jensen refused without good cause an offer of employment. As defendant does not claim any authority to "deregister" a person registered with Job Service, Davis and Jensen are not identically situated. This distinction, however, is not significant under the courts view and further reference to plaintiffs will apply to both.

## JURISDICTION

■ The Court will first consider the defendant's jurisdictional challenge. The complaint alleges that jurisdiction is conferred by 28 U.S.C. § 1343(3), (4), and states that the action is authorized by 42 U.S.C. § 1983. The defendant contends that *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979) requires the Court to find it lacks jurisdiction because (1) section 1983, found to be remedial and not substantive in nature, does not provide for the "protection of civil rights, . . . " within the meaning of § 1343(3), and (2) the allegation of incompatibility between federal and state statutes does not give rise to a claim "secured by the Constitution" within section 1343(3). In *Chapman*, however, the plaintiffs failed to assert any constitutional claim. The plaintiffs in the present matter allege that the defendant's actions were taken in violation of the equal protection and due process clauses of the Fourteenth Amendment. In *Hagans v. Lavine*, 415 U.S. 528, 536–37, 94 S.Ct. 1372, 1378–79, 39 L.Ed.2d 577 (1974), the Supreme Court held that a constitutional claim will support pendent jurisdiction if such claim is not "wholly insubstantial", "obviously frivolous", or "no longer open to question". The Court is of the opinion that the constitutional claims asserted in this case are sufficient to satisfy this standard. The Court, therefore, has jurisdiction to consider the constitutional claims pursuant to section 1343(3), and may exercise pendant jurisdiction over the plaintiffs' other claims.

## CLASS CERTIFICATION

■ Because the Court has found that it has jurisdiction to consider this matter, the Court must next consider the plaintiff's request for class certification. The plaintiffs in their Class Action Memorandum filed January 15, 1980, state that they bring the action on behalf of themselves and the following persons:

. . . [T]he class of innocent family members in Iowa families qualifying for AFDC on the basis of a parent's unemployment whose AFDC benefits have been or might be terminated because the unemployed parent refused an offer of employment or to otherwise comply with an AFDC employment, employment referral, or training requirement.

The plaintiffs allege that the class meets all the requirements for certification found in Rule 23(a) and (b)(2) of the Federal Rules of

Civil Procedure. The defendant filed no written objections to the request, and at trial, the defendant's counsel suggested only that the numerosity requirement may not be satisfied in light of the information contained in the defendant's answers to interrogatories filed January 17, 1980.

After careful consideration, the Court is of the opinion that the plaintiffs' request for certification of the above-defined class should be granted. The only issue raised by defendant is whether the numerosity requirement is satisfied. Rule 23(a)(1) states:

> One or more members of a class may sue or be sued as representatives on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, . . . .

According to defendant's answers to interrogatories filed January 17, 1980, a substantial number of Iowa families receive AFDC based upon a parent's unemployment. In addition, these answers indicate that from January 1, 1978 to December 1979, fifty-three nonmandatory WIN households were terminated from benefits for failure of one parent to cooperate with Job Services, failure to maintain current registration, or failure to accept offers of employment or training. (See Defendant's Answers of January 17, 1980, Attachment 2). During the period November 1978 to November 1979, three mandatory WIN households were sanctioned for failure to cooperate with the WIN program or failure to accept offers of employment or training. (See Defendant's Answers of January 17, 1980, Attachment 3). The plaintiffs note in their class action memorandum that the defendant informed them that at least fifteen mandatory WIN households were denied assistance as a result of a parent's deregistration during Fiscal Year 1978 in the twenty-five mandatory WIN counties in Iowa. (See Defendant's Answers of January 7, 1980, Interrogatory 6). The Court believes that these statistics indicate that the policy in question has and could be applied to a group of families sufficiently large to make joinder impracticable. In addition, the particular individu-

als and families affected change from time to time. Therefore, class certification is granted.

## VALIDITY OF STATE REGULATIONS

Plaintiffs claim that the defendant's actions which denied AFDC to the entire family because the father refused, without good cause, to accept employment pursuant to the state regulations were invalid because such regulations are void under the Supremacy Clause as inconsistent with the federal standards set forth in 42 U.S.C. § 602 et seq. and 45 C.F.R. § 224.51 (1978).

The pertinent parts of 42 U.S.C. § 602 provide:

> § 602(a) A State plan for aid and services to needy families . . . must . . . ; (19) provide—. . .
>
> (F) that if and for so long as any child, relative, or individual . . . has been found . . . to have refused without good cause to participate under a work incentive program . . : or to have refused without good cause to accept employment . . .
>
> (i) if the relative makes such refusal, such relative's needs shall not be taken into account [in determining the amount of aid] . . . .

The pertinent parts of § 224.51 provide:

> § 224.51 A State plan . . . shall provide that:
>
> (a) When a registered recipient has been found to have failed or refused without good cause to participate in the WIN program, the following sanctions shall apply:
>
> (1) If such individual is a caretaker relative [1] receiving AFDC, his needs will not be taken into account in determining the family's need for assistance, . . .

Defendant claims that Congress intended to make a distinction between nonparticipating parents and all other nonparticipating caretaker relatives. Defendant and the Secretary of Health, Education and Welfare argue that 42 U.S.C. § 607 and 45

---

1. "Caretaker relative" is not defined in the statutes or regulations. Although defendant seems to argue otherwise, the Court holds that this term is intended to refer to those relatives named in 42 U.S.C. § 606(a) which includes the father.

C.F.R. 233.100 set forth the more specific sanctions applicable to nonparticipating parents and require the termination of aid to the entire AFDC family if the parent refuses to accept employment without good cause. The pertinent portions of 42 U.S.C. § 607 provide:

§ 607(a) The term 'dependent child' shall, . . . include a needy child . . . . who has been deprived of parental support or care by reason of the unemployment . . . of his father[2]

. . .

(b) The provisions of subsection (a) of this section shall be applicable to a State if the State's plan . . .

(2) provides—

(C) for the denial of aid to families with dependent children to any child or relative specified in subsection (a) of this section—

(i) if, and for so long as such child's father . . . is not registered . . for the work incentive program . . . or . . . is not registered with the public employment offices in the State,

. . .

The pertinent portions of 45 C.F.R. 233.-100 provides:

§ 233.100 [The State plan which provides AFDC for children of unemployed fathers must]:

(5) Provide for the denial of such aid to any such dependent child or the relative specified in section 406(a)(1) of the Act with whom such child is living,

(i) If and for so long as such child's father, unless exempt . . . is not registered for [WIN] or if exempt . . is not registered with a public employment office in the State . . .

The plaintiffs concede that the family is not eligible if the unemployed father refuses to register but argue that Congress intended to draw a distinction between the initial eligibility for AFDC–UF and continued participation in the program once initial eligibility has been established by registration. The plaintiffs claim that if an unem-

ployed parent initially registers, and later the relative refuses without good cause to participate in WIN or accept offers of employment from the state public employment offices, "such relative's needs shall not be taken into account" in determining the family's aid, but protective payments are to be made to the dependent children. 42 U.S.C. § 602(a)(19)(F)(i) (Supp.1979). As a result, according to plaintiffs, the sanctions are properly focused on the non-cooperative parent and not on the blameless child.

The central issues in this controversy revolve around the term "deregister" which is used in the regulations but not the statutes. Did Congress intend to give the Secretary the authority to cancel the registration of a parent for failure to accept employment and place the parent and his family in the same position they would have been in if the parent had refused to register in the first place, or did Congress intend to make the simple act of registration of a parent enough to establish eligibility for the family whether or not the parent later participated in the program in good faith?

There are sound arguments for the interpretation that Congress intended to terminate aid to the entire family if a parent refused to accept offered employment. Congress stated the purpose of the WIN program in 42 U.S.C. § 630, which requires the establishment of a program under which individuals receiving AFDC "will be furnished incentives, opportunities and necessary services" for job training and regular employment thus "restoring the families of such individuals to independence and useful roles in their communities". Congress expected "that the individuals participating in [WIN] will acquire a sense of dignity, self-worth, and confidence which will flow from being recognized as a wage-earning member of society and that the example of a working adult in these families will have beneficial effects on the children in such families". Fathers like those in the instant cases who make no effort to participate in

---

**2.** In *Califano v. Westcott,* 443 U.S. 76, 99 S.Ct. 2655, 61 L.Ed.2d 382 (1979), the Supreme Court broadened the applications to either parent.

the program do not tend to fulfill the expectations of Congress. Such conduct could be expected to have deleterious, rather than beneficial, effects upon the children. The children will learn to manipulate well-intended welfare programs so that the family can get aid and the father doesn't have to work. This example could hardly inspire a feeling of dignity, self-worth, and confidence in the father or teach the children to look upon a hard working wage earner with respect.

It may very well be, however, that Congress believed that the necessary incentive would be supplied if only the aid to the father was terminated as a result of his own failure to participate in either a WIN program or public employment agency activities. This limited sanction would tend to promote the overall purpose of the AFDC program generally which is to provide aid to needy children. The children should not suffer because of the faults of their parents. (See Congressional History hereinafter referred to). Congress may have intended that the needy family should benefit from a father's mere act of registering. The Court will attempt to ascertain Congressional intent from the statutes and available legislative history.

The Court has not found any statute permitting the Secretary to revoke a person's initial registration with either WIN or the state public employment office for refusal to participate in WIN or accept employment offers from the state employment office. In fact, the term "deregistration" is found only in the Secretary of Labors' regulation set forth in 45 C.F.R. Part 224 et seq. In 42 U.S.C. § 602(a)(19)(F)(i), Congress provides for the application of identical sanctions in cases where the unemployed caretaker relative refuses without good cause to participate in the WIN program, or to accept offers of employment from a state employment office in counties where WIN is voluntary or non-operational. Defendant does not argue that he has authority to "deregister" a parent who has registered with Job Service of Iowa as a public employment office but failed to participate in its employment assistance activities. There is no reason why Congress would impose a more stringent sanction upon a parent registered under WIN than a registrant under Job Services nor is there any reason why Congress would authorize "deregistration" under WIN but not Job Services. The Court believes that Congress intended to treat families the same whether the parent was registered under WIN or with Job Services in its capacity as a public employment agency.

The issue presently before the Court has not been the subject of much litigation, but the Court believes that the cases cited below indicate that the family's assistance should not be terminated if the unemployment parent refuses without good cause to participate in WIN or accept employment opportunities. The Supreme Court of Pennsylvania considered the issue in *Fritsch v. Wohlgemuth*, 474 Pa. 391, 378 A.2d 849 (1977). In *Fritsch*, the Pennsylvania Court reversed a lower court's decision that the financial assistance provided to a mother and her children under AFDC–UF could be terminated for failure of the unemployed father to cooperate after initial registration in the WIN program. The facts indicate that the father was not formally deregistered from the WIN program, but that the Department of Public Welfare—Pennsylvania Manual § 3182 required this sanction for failure of the father to seek, accept or retain employment. The state supreme court concluded that the state regulation was in substantial conflict with federal law, 42 U.S.C. § 602(a)(19)(F). *Fritsch*, supra at 852. Admittedly, this language is dicta since the case could have been disposed of on the fact that the unemployed father had not been deregistered, and therefore, the sanctions imposed were not available. The Pennsylvania Court, however, provides this Court with an indication of how the issue before it should be resolved. In addition, other courts have considered this issue and have generally found that the children's payments are not to be terminated because the unemployed father has failed to accept or seek employment. See *Woolfolk v. Brown*, 456 F.2d 652, 655 (4th Cir. 1972), cert. denied 409 U.S. 885, 93 S.Ct. 112, 34 L.Ed.2d 141; *Rush v. Smith*, 573 F.2d 110,

118 (2d Cir. 1978); *Armstrong v. Candon,* 451 F.Supp. 1148, 1157 (D.Vt.1978); *Bueno v. Juras,* 349 F.Supp. 91, 93 (D.Or.1972).

Further, the Court's interpretation of the statutory and regulatory language, and the limited case law, is consistent with the legislative history of these provisions. In 1967, major amendments to the Social Security Act were enacted. See Social Security Amendments of 1967, P.L. 90–248 (1967). In revising the Act, Congress deleted from 42 U.S.C. § 607(b) the clause (2)(B) which provided for the prohibition of aid as long as the unemployed parent refused without good cause to accept employment offered through public employment offices. Pub.L. 90–248, § 203(a) (1968). At the same time, Congress added paragraph (19)(F) to 42 U.S.C. § 602(a) which allows for the termination of benefits to the uncooperative relative, but requires that benefits must continue to be paid to the needy family in the form of protective or vendor payments. This revision in statutory structure evidences Congress's intent that 42 U.S.C. § 602(a)(19)(F) serve as the provision outlining the sanctions available to penalize persons required to seek employment within the family who fail to cooperate in their employment future. Section 607(b)(2) of Title 42 logically remains to govern only the initial application for AFDC–UF benefits. In addition, language found in the legislative reports accompanying P.L. 90–248 through the stages of legislative consideration evidence Congress's intent to "protect the dependent children from the faults of others". H.R.Rep.No. 544, 90th Cong., 1st Sess.–(1967), reprinted in 1967 U.S.Code Cong. & Admin.News, pp. 2834, 2860; S.Rep.No. 744, 90th Cong., 1st Sess.–(1967) reprinted in 1967 U.S.Code Cong. & Admin. News, pp. 2834, 3002; Conf.Rep.No. 1030, 90th Cong., 1st Sess.–(1967) reprinted in 1967 U.S.Code Cong. & Admin.News, pp. 2834, 3204. Therefore, the Court believes that the proper construction of the above statutes requires a relative's assistance upon deregistration to be terminated, but prohibits the needy family's assistance from being terminated.

The Court believes that the language adopted by Congress in 42 U.S.C. §§ 607 and 602 can and should be interpreted to prohibit termination of the family's assistance once the unemployed parent has initially registered so as to further this purpose. The Court finds that the IDSS Manual sections IV–D–15 and IV–D–16 are in conflict with the federal standards found in 42 U.S.C. § 602(a)(19)(F)(i) insofar as the state regulations require the termination of the entire family's assistance upon the unemployed parent's deregistration for failure to participate in the WIN program.

It is true that the United States Supreme Court in *New York Department of Social Services v. Dublino,* 413 U.S. 405, 422, 93 S.Ct. 2507, 2517, 37 L.Ed.2d 688 (1973) held that the WIN provisions of the Social Security Act do not preempt state work rules. The Supreme Court had earlier qualified this approach, however, by stating that courts are not to void the additional, requirements only "[s]o long as the State's actions are not in violation of any specific provision of the Constitution or Social Security Act." *Jefferson v. Hackney,* 406 U.S. 535, 541, 92 S.Ct. 1724, 1729, 32 L.Ed.2d 285 (1972). There is no indication in *Dublino,* supra, that the Supreme Court intended to eliminate this qualification. In addition, the Supreme Court in *Townsend v. Swank,* 404 U.S. 282, 286, 92 S.Ct. 502, 505, 30 L.Ed.2d 448 (1971), held that "a state eligibility standard that excludes persons eligible for assistance under the Federal AFDC standards violates the Social Security Act and is, therefore, invalid under the Supremacy Clause." Therefore, the Court concludes that sections IV–D–15 and IV–D–16 of the IDSS Employees Manual are void under the Supremacy Clause because they are in substantial conflict with the federal standards set forth in 42 U.S.C. § 602(a)(19)(F)(i) and 45 C.F.R. § 224.51 (1978).

Because this matter can be disposed of under the Supremacy Clause, the Court will not consider the plaintiffs' constitutional claims under the Equal Protection and Due Process Clauses of the Constitution.

As relief for the improper denial of assistance to the family of deregistered unem-

ployed fathers, the Court concludes that the defendant should be permanently enjoined from denying assistance to plaintiffs or others similarly situated on the basis that the unemployed parent, as otherwise required by law, refused without good cause to accept employment in which he is able to engage which is offered through the Job Services of Iowa, or refused without good cause to participate in a WIN program. The Court further concludes that the plaintiffs' request for class relief should be granted and that the defendant should be ordered to notify promptly by first class mail at their last known address all persons denied or terminated from AFDC–UF because of the provisions enjoined herein that benefits may have been unlawfully denied them. In addition, such notice shall inform them of the state administrative procedures, IDSS Employees Manual I–E–23, available to them to seek restitution. The Supreme Court has held that the Eleventh Amendment does not bar a federal district court from ordering the state to provide such notice. *Quern v. Jordan*, 440 U.S. 332, 349, 99 S.Ct. 1139, 1149, 59 L.Ed.2d 358 (1979).

IT IS THEREFORE ORDERED that the Clerk is directed to cause judgment to be entered in favor of the plaintiff and plaintiff-intervenor in accordance with this opinion.

IT IS FURTHER ORDERED that the defendant, his successors in office, agents and employees, and all other persons in active concert and practice with them, are hereby permanently enjoined from applying IDSS provisions IV–D–15 and IV–D–16 so as to deny AFDC–UF assistance to the plaintiff and plaintiff-intervenor or others similarly situated on the basis that the unemployed parent, as otherwise required by law, refused without good cause to accept employment in which he is able to engage which is offered through the Job Services of Iowa as a state public employment office, or refused without good cause to participate in a WIN program.

IT IS FURTHER AND FINALLY ORDERED that the defendant shall notify promptly by first class mail at their last known address all persons denied or terminated from AFDC–UF because of the provisions of the IDSS Employees Manual enjoined herein (1) that benefits may have been unlawfully denied them, (2) that state administrative procedures, IDSS Employees Manual I–E–23, may be available to them to seek restitution, and (3) of what such persons must do to attempt to avail themselves of these procedures.

The Court cannot close this opinion without expressing the reservations remaining in its thinking about this ruling. There is potential for great harm to the AFDC and WIN programs generally. Parents who have been doing their best to cooperate with the program may question why they should try so hard when the family will get benefits in any event. There could be a substantial increase in parents who refuse to participate without good cause. If this happens, the state may decide the program is not fulfilling its purpose and discontinue it with a resulting hardship on those who have tried. In light of these potential consequences, the sanctions contained in the Iowa regulations could be deemed appropriate and necessary. There is far less difference between a parent who refuses to register and one who merely signs his name than there is between the name signer and one who in good faith tries to do what is expected of him. If some needy children are to be given aid that is denied other needy children, the line should be drawn between those children whose parents try to get a job and those whose parents do not. As indicated earlier, however, the Court does not believe that Congress intended to draw the line there.

### RULING AND ORDER

#### On Application for Stay and Motion to Amend Judgment

The Court has before it the defendant's Application for a Stay filed March 5, 1980, and resisted on March 17, 1980. The Court also has before it the plaintiffs' unresisted Motion to Amend Judgment filed February 29, 1980. The Court is presently prepared to rule on both these motions.

On February 13, 1980, the Court entered an Order in which it permanently enjoined the defendant and other described persons from applying Iowa Department of Social Services provisions IV–D–15 and IV–D–16 so as to deny AFDC–UF assistance to the plaintiff and others similarly situated on the basis that the unemployed parent refused without good cause to accept employment through the state public employment office, or refused without good cause to participate in a WIN program. The plaintiffs then moved that the judgment be amended so as (1) to allow the issue of attorney fees to be reserved for a period of sixty days from the date of entry of an amended judgment, and (2) to conform the judgment to the Court's opinion. According to plaintiffs, the judgment entered February 19, 1980 does not clearly provide relief when the unemployed parent, who has registered with the state public employment office or the WIN office, and his family are denied benefits for failure of the unemployed parent to accept offers of employment or participate in WIN. The plaintiffs state that the Order of February 13, 1980 was intended to provide relief in both situations.

The Court shall grant the plaintiffs' motion to amend judgment. The Clerk is hereby directed to amend the judgment entered to state as follows:

IT IS ORDERED AND ADJUDGED that the plaintiffs' and plaintiff-intervenors' request for class certification is hereby granted as to the class of persons described as innocent family members in Iowa families qualifying for AFDC on the basis of a parent's unemployment whose AFDC benefits have been or might be terminated because the unemployed parent refused an offer of employment or to otherwise comply with an AFDC employment, employment referral, or training requirement.

IT IS FURTHER ORDERED that judgment is hereby entered in favor of plaintiffs and plaintiff-intervenor in accordance with the Ruling and Order of February 13, 1980, but that the issue of an award of attorney fees shall be reserved so that formal application for such an award may be made within sixty days of the entry of this amended judgment.

IT IS FURTHER ORDERED that the defendant, his successors in office, agents and employees, and all other persons in active concert and practice with them, are permanently enjoined from denying AFDC–UF assistance to plaintiff, plaintiff-intervenor and the members of their class, as defined by the Court above, on the basis that the unemployed parent, as otherwise required by law, refused without good cause to accept employment in which he is able to engage which is offered through the Job Services of Iowa as a state public employment office, or refused without good cause to participate in a WIN program.

IT IS FURTHER AND FINALLY ORDERED that defendant Michael Reagan shall notify promptly by first class mail at their last known address all persons denied or terminated from AFDC–UF because of the policy enjoined herein (1) that benefits may have been unlawfully denied them, (2) that state administrative procedures, IDSS Employees Manual I–E–23, may be available to them to seek restitution, and (3) of what such persons must do to attempt to avail themselves of these procedures.

■ The Court also has before it the defendant's application for a stay. In this application, the defendant requests a stay of judgment pending his appeal because said judgment ". . . substantially effects the manner in which the unemployed fathers' program has been administered in Iowa . . .", and presents ". . . grave matters of statutory construction . . .". The plaintiffs resist the defendant's application on the basis that he has failed to bear his burden of demonstrating: (1) a strong showing that he is likely to succeed on the merits of the appeal; (2) a showing that, unless a stay is granted, he will suffer irreparable injury; (3) a showing that no substantial harm will come to other interested parties; and (4) a showing that a stay will do no harm to the public interest. *Reserve Mining Co. v.*

*United States,* 498 F.2d 1073, 1076–77 (8th Cir. 1974), *vacation of stay order denied,* 419 U.S. 802, 95 S.Ct. 287, 42 L.Ed.2d 33 (1974), *renewed application for vacation of stay order denied,* 420 U.S. 1000, 95 S.Ct. 1441, 43 L.Ed.2d 758 (1975).

After careful consideration, the Court is of the opinion that the defendant's application for stay as hereinafter limited should be granted. The Court shall stay the judgment entered February 19, 1980, as amended herein, for a period of sixty days from the date of this Order to give defendant an opportunity to request a further stay from the Eighth Circuit Court of Appeals. The purpose of this limited stay is to temporarily preserve the status quo. During the stay period, the defendant need not send the class notice to all persons denied or terminated from AFDC–UF because of the policy enjoined. In addition, the defendant need not extend benefits to new AFDC–UF applicants who otherwise would be denied benefits under the policy enjoined. The defendant, however, may not terminate, pursuant to the enjoined policy, any of the benefits being paid to families who presently are receiving such AFDC–UF benefits.

IT IS THEREFORE ORDERED that the plaintiffs' Motion to Amend Judgment shall be granted, and the Clerk is hereby directed to amend the judgment entered February 19, 1980 as set forth herein.

IT IS FURTHER ORDERED that the defendant's Application for a Stay shall be granted, and the judgment of February 19, 1980, as amended, shall be stayed for sixty days from the date of this Order.